Ryan H. Weinstein (Cal. Bar No. 240405)
ryan.weinstein@ropesgray.com
ROPES & GRAY LLP
10250 Constellation Boulevard
Los Angeles, California 90067
Telephone: +1 310 975 3310
Facsimile: +1 310 975 3400

Lori Lowenthal Marcus*
lorilowenthalmarcus@deborahproject.org
Jerome M. Marcus*
jmarcus@deborahproject.org
THE DEBORAH PROJECT
P.O. Box 212
Merion Station, Pennsylvania 19066
Telephone: +1 610 880 0100
Facsimile: +1 610 664 1559

Attorneys for Plaintiffs

*[Additional counsel on next page]*
* admitted pro hac vice

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCERNED JEWISH PARENTS OF SEQUOIA UNION HIGH SCHOOL DISTRICT, *et al.,*<br><br>    Plaintiffs,<br><br>    v.<br><br>SEQUOIA UNION HIGH SCHOOL DISTRICT, *et al.,*<br><br>    Defendants. | Case No.  3:24-cv-08015-MMC (KAW)<br><br>**JOINT LETTER REGARDING DEFENDANTS' REVIEW AND COLLECTION OF MOBILE DATA**<br><br>Judge: Hon. Kandis A. Westmore |

Amy Jane Longo (Cal. Bar No. 198304)
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Telephone:  +1 415 315 2301
Facsimile:  +1 415 315 6350
amy.longo@ropesgray.com

David B. Hennes*
Gregg L. Weiner*
Alexander B. Simkin*
Elana M. Stern*
Judy Faktorovich*
Laura Medina*
Lauren C. Brady*
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone:  +1 212 596 9000
Facsimile:   +1 212 596 9090
david.hennes@ropesgray.com
gregg.weiner@ropesgray.com
alexander.simkin@ropesgray.com
elana.stern@ropesgray.com
judy.faktorovich@ropesgray.com
laura.medina@ropesgray.com
lauren.brady@ropesgray.com


* admitted pro hac vice

Dear Judge Westmore:

Pursuant to the Court's September 17, 2025 order (Dkt. No. 99), Plaintiffs and Defendants (the "Parties") respectfully submit this letter regarding Plaintiffs' request to compel Defendants to engage in a forensic collection and production of Defendants' mobile data. Pursuant to Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions, including most recently on October 8, 2025; October 10, 2025; and October 16, 2025, before making this submission. Despite these efforts, the Parties have concluded that no agreement can be reached and therefore seek the Court's intervention.

DATED: October 24, 2025

**ROPES & GRAY LLP**
**THE DEBORAH PROJECT**

By: */s/ Ryan H. Weinstein*

    Ryan H. Weinstein (Cal. Bar. No. 240205)
    10250 Constellation Boulevard
    Los Angeles, California 90067
    Telephone: +1 310 975 3310
    Facsimile: +1 310 975 3400
    ryan.weinstein@ropesgray.com

    Elana M. Stern*
    1211 Avenue of the Americas
    New York, New York 10036
    Telephone: + 1 212 596 9000
    Facsimile: +1 212 596 9090

    Lori Lowenthal Marcus*
    Jerome M. Marcus*
    P.O. Box 212
    Merion Station, Pennsylvania 19066
    Telephone: + 1 610 880 0100
    Facsimile: + 1 610 664 1559
    lorilowenthalmarcus@deborahproject.org
    jmarcus@deborahproject.org

    Attorneys for Plaintiffs
    Admitted pro hac vice*

**DANNIS WOLVER KELLEY**

By: */s/ William B. Tunick*

    William B. Tunick
    Keith A. Yeomans
    Ellyn L. Moscowitz
    Suvarna R. Bhopale
    200 California Street, Suite 400
    San Francisco, CA 94111
    Telephone: 415 543 4111
    Facsimile: 415 543 4384
    wtunick@dwkesq.com
    kyeomans@dwkesq.com
    emoscowitz@dwkesq.com
    sbhopale@dwkesq.com

    Attorneys for Defendants

**Plaintiffs' Summary of Issue:**  In May 2025, Plaintiffs served requests for production explicitly seeking Defendants' relevant short-message communications, including "text messages . . . , instant messages, [and] app-based messages."  *See, e.g.,* Exhibit 1 (Superintendent RFPs at 2–3).  Defendants insist on producing such communications, if at all, based exclusively on self-collection by individual Defendants.  Plaintiffs, by contrast, propose that both sides undertake a counsel-directed, vendor-assisted, forensic collection of short-message data from agreed-upon custodians and data sources, using negotiated search terms.  The issue before the Court is therefore which approach best ensures a complete, auditable, and proportional production under Federal Rules of Civil Procedure 26(b)(1), 26(g), and 34, particularly given testimony that Defendants used short-message platforms for relevant communications.

**Plaintiffs' Position:**  Defendants' reliance on the self-collection of text, chat, and app-based messages by individual custodians—guided only by defense counsel's search terms and left to each custodian to decide what is "responsive"— conflicts with the Federal Rules and controlling case law.  *See In re Social Media Adolescent Addiction/Personal Injury Prods. Liability Litig.*, No. 22-md-03047-YGR (PHK), 2024 WL 4125618, at *14 (N.D. Cal. Sept. 6, 2024) ("[A]n attorney cannot abandon his professional and ethical duties imposed by the applicable rules and case law and permit an interested party or person to 'self-collect' discovery without any attorney advice, supervision, or knowledge of the process utilized.").  Rule 34 requires the production of all responsive ESI within a party's "possession, custody, or control," and Rule 26(g) obligates counsel to certify, after "a reasonable inquiry," that discovery responses are complete and correct.  As courts have repeatedly warned, unsupervised custodian self-collections are inherently unreliable, undermine counsel's Rule 26(g) certification, and predictably yield gaps, omissions, and disputes.  One court put it plainly: "Parties and counsel that embark on self-collection can soon encounter multiple pitfalls that can sidetrack the litigation and lead to motions to compel, spoliated evidence, and even sanctions."  *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 934–35 (N.D. Ill. 2021).  Another found that a party's "vague explanation of how counsel supervised and directed [clients] in searching for and identifying responsive documents" was "sufficient to highlight the risks of [] self-search processes."  *Benanav v. Healthy Paws Pet Ins. LLC*, No. C20-00421-LK, 2022 WL 3587982, at *4 (W.D. Wash. Aug. 22, 2022).  And a third expressed "astonishment" that an individual defendant was "apparently solely responsible for determining what [materials] were or were not responsive," underscoring why entrusting responsiveness determinations to non-lawyer custodians is improper.  *Rapp v. NaphCare, Inc.*, No. 3:21-cv-05800-DGE, 2023 WL 3741475, at *11 (W.D. Wash. May 31, 2023); *see Knickerbocker v. Corinthian Colls., Inc.*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) ("Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched.") (citation omitted).

Defendants' suggestion that the "large majority" of relevant ESI resides on District servers does not answer the point.  Testimony from District officials has confirmed that non-email short-message platforms were used to conduct District business.  (*See* Dkt. No. 96-16 at 32:6-20; 33:17-24.)  Such off-channel communications are outside traditional email repositories and frequently represent the

1

most candid and probative evidence of intent, knowledge, coordination, and contemporaneous decision-making. *See, e.g.*, *James v. U.S. Bancorp*, No. ED CV 18-1762-FLA (SPx), 2021 WL 1890787, at *6 (C.D. Cal. May 11, 2021) (finding it "likely" that Skype messages "contained evidence of defendants' state of mind" in racial discrimination action). Server-side email searches cannot capture these essential sources.

Rule 26(b)(1)'s proportionality factors likewise support a targeted forensic collection. The issues at stake are significant, the amount in controversy is substantial, and—most importantly—the significance of short-message communications to the claims and defenses is high. As this case concerns allegations of antisemitic discrimination and a deliberate indifference to such discrimination, evidence of the Defendants' state of mind and potential biases is crucial. *See, e.g.*, *Lee v. Asplundh Tree Expert Co.*, No. C17-719-MJP, 2017 WL 6731978, at *2 (W.D. Wash. Dec. 29, 2017) (ordering forensic imaging of plaintiff's cellphone data in employment discrimination action after her "pattern of deception cast[] doubt upon other evidence she has produced and may yet provide"). The notion that individual Defendants would voluntarily and completely self-collect and produce communications reflecting potentially discriminatory biases, particularly if those biases are subtle or unconscious, is fundamentally inconsistent with the realities of adversarial litigation. Such reliance would gravely undermine the fairness of the discovery process. Forensically sound collections, including with an auditable review and production process managed by attorneys, are thus not merely desirable, but essential to ensuring the integrity of the evidence, preventing selective production, and uncovering communications that speak directly to the intent and motivation underlying the alleged discriminatory acts.

At the same time, a properly scoped forensic collection is manageable and efficient. Plaintiffs' proposed protocol limits mobile data applications and time periods; uses search terms to cull volume; and leverages threading and de-duplication to minimize review. Where burden is credibly demonstrated for particular custodians or applications, the parties can adjust scope. But a wholesale refusal to conduct any forensic collection of mobile data is inconsistent with the Rules and the authorities above. Defendants' burden-related complaints here are neither substantiated nor dispositive.

Defendants' timing arguments also miss the mark. Plaintiffs' document requests, served at the outset of discovery, put Defendants on notice that collection and production of short-message communications are called for in this case. (*See* Ex. 1.) Written correspondence and meet-and-confer discussions following these initial discovery requests repeatedly sought confirmation from Defendants that they were indeed undertaking custodial mobile collections. After months of shifting and non-committal responses, Plaintiffs sent their proposed short messaging protocol to Defendants on August 15, 2025. A forensically sound, counsel-directed process is the appropriate—and now necessary—cure for the deficiencies in Defendants' approach, and it is the most efficient way to avoid the very risks courts have warned against. For these reasons, the Court should order Defendants to proceed with a targeted, counsel-led forensic collection of short-message data consistent with the protocol attached hereto as Exhibit 2, to which Plaintiffs have committed to applying to forensically

2

collected mobile data.  Plaintiffs seek no more than the same level of compliance they already have undertaken.  Plaintiffs therefore respectfully ask the Court to compel Defendants to fulfill their reciprocal discovery obligations.

**Defendants' Position:**  Plaintiffs' requests for production seek ESI from sixteen Defendants and the District, including from seven governing board members (two of whom are no longer on the board), and nine District employees (one of whom is no longer employed by the District).   They have demanded full forensic collection of all ESI from all individual Defendants' mobile devices without any delineation between Defendants.

The large majority of ESI relevant to this matter is stored on the District's email and other servers which counsel has worked directly with the District's information technology department to search, leading to production of records to date and anticipated additional productions in November.  Productions to date include not only email and other electronic records maintained on District servers, but relevant Google Chat messages which were produced by Defendants as part of their August 1 production.[1]

Following the filing of the litigation, all Defendants were informed in writing of the need to preserve records, including text and other messages. They were also requested to provide relevant records.  Subsequent to these initial efforts (which took place while initial settlement conversations were underway), Plaintiffs sent the referenced discovery requests in May 2025. Shortly before propounding discovery, Plaintiffs had notified Defendants of their intent to file an amended complaint, although they did not share the proposed amended complaint with Defendants until July and ultimately filed a further amended complaint in September. In the meantime, on August 15, Plaintiffs indicated they were currently "engaged in collection of mobile data" and for the first time proposed a "Messaging Search Protocol." On September 3, Defendants responded that they were not opposed to such a protocol and would respond after Plaintiffs filed their amended complaint on September 17, as the amendment could impact the search terms. Defendants provided their revisions on September 25; Plaintiffs objected to the revisions.  As it became clear an agreement was not possible, on October 6, Defendants provided the search protocol that Defendants would use (attached hereto as Exhibit 3) and asked the Plaintiffs do the same, which Plaintiffs did on October 10.

In that same October 10 letter, Plaintiffs insisted that any process outside of a full forensic collection of all ESI from all individual Defendants' mobile devices would be insufficient. Defendants' position is that the attorney-directed collection, review, and search process outlined below is sufficient to meet their obligation in light of the

---

[1] Plaintiffs state: "Testimony from District officials has confirmed that non-email short-message platforms were used to conduct District business.  (*See* Dkt. No. 96-16 at 32:6-20; 33:17-24.)"  Preliminary, only one District official, Todd Beal, has been deposed in this matter.  His reference to such communications was limited to text messages and Google Chat messages which the District has, and will continue, to directly search and produce.

claims, relevancy of the communications, and burden associated with the process demanded by Plaintiffs.

Beyond their efforts to date, Defendants' production of text messages (including SMS and MMS), instant messages, and app-based messages from Defendants would be completed by: (1) counsel asking each individual Defendant to confirm in writing whether they send text messages (including SMS and MMS), instant messages, and app-based messages using any of the applications listed in Defendants' Messaging Search Protocol; (2) for each individual Defendant, counsel will provide detailed instructions for searching each application which an individual Defendant indicates they use along with the search terms listed in Defendants' Messaging Search Protocol, counsel will confer with the appropriate technical experts if necessary to provide these search instructions, and individual Defendants will be informed that they should inquire with counsel if they have any questions or challenges in performing the search; (3) each individual Defendant will provide any responsive messages, along with any other messages with the same recipient(s)/sender(s) from that day to counsel for review in a manner that allows counsel to identify the date, time, and recipient(s)/sender(s); (4) each individual Defendant will provide written verification of this process and indicate that they have understood the process, completed the searches, and provided all responsive messages to counsel; (5) counsel will review messages provided and produce those which are responsive and subject to disclosure. To the extent other discovery indicates the existence of records which were not collected via this process, counsel would meet and confer to perform additional targeted searches to locate or confirm the non-existence of such records.

Defendants assert that this auditable process is appropriate as it will be accomplished under the advice and supervision of counsel. *In re Social Media Adolescent Addition/Personal Injury Prods. Liability Litig.,* No. 22-md-03047-YGR (PHK), 2024 WL 4125618, *14 (N.D. Cal. Sept. 6, 2024). Plaintiffs essentially argue that attorney-supervised collection is never appropriate; it may be that a forensic collection is more comprehensive, but that does not mean it is always proportional. The process as outlined is proportional to the type and nature of the claims, the relative importance of this aspect of discovery, and the burden and expense of the proposed discovery. As explained above, unlike the relevant ESI held by Plaintiffs, the large majority of ESI held by Defendants is held on District servers that has already and can be directly searched. Further, Defendants' process avoids the burden, particularly related to the cost (estimated at $25,000 to $35,000) to retain an independent forensic expert to image and search devices of 16 individuals. Plaintiffs have not suggested any adjustment as to the scope of the full forensic collection for all Defendants to address this burden or explained why the District should bear the cost of this process. Further, the process proposed by Defendants avoids the unnecessary collection of data from private devices which is entirely irrelevant to this litigation.

4

**FILER'S ATTESTATION**

Pursuant to L.R. 5-1(h)(3), I, Ryan H. Weinstein, attest that all other signatories listed herein and on whose behalf this filing is submitted have authorized this filing and concur in its content.


DATED: October 24, 2025                          By: */s/ Ryan H. Weinstein*
                                                        Ryan H. Weinstein