WILLIAM B. TUNICK, State Bar No. 245481
wtunick@DWKesq.com
KEITH A. YEOMANS, State Bar No. 245600
kyeomans@DWKesq.com
ELLYN L. MOSCOWITZ, State Bar No. 129287
emoscowitz@dwkesq.com
SUVARNA R. BHOPALE, State Bar No. 242734
sbhopale@DWKesq.com
Dannis Woliver Kelley
200 California Street, Suite 400
San Francisco, CA  94111
Telephone: 415.543.4111
Facsimile: 415.543.4384

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCERNED JEWISH PARENTS OF SEQUOIA UNION HIGH SCHOOL DISTRICT; L.K., a minor, by and through her Guardians ad Litem, Sam and Andrea Kasle; S.B., a minor, by and through her Guardians ad Litem, Igor and Marina Bershteyn; W.K., a minor, by and through his Guardian ad Litem, Margarette Kesselman; ADAM LYLE; OLIVIA REIF; DINA BERG; OMER BECK; SAM KASLE; ANDREA KASLE; SCOTT LYLE; and LORI LYLE,<br><br>        Plaintiffs,<br><br>    v.<br><br>SEQUOIA UNION HIGH SCHOOL DISTRICT; KAREN VAN PUTTEN, CHARLES VELSCHOW, WENDY PORTER, GREGORY S. GRUSZYNSKI, ABDULHADI "HADI" KADDOURA, KARL LOSEKOOT, CRYSTAL LEACH, BONNIE HANSEN, TODD BEAL, RICHARD GINN, AMY KOO, and SATHVIK NORI, each in their official and personal capacities; MARY BETH THOMPSON, and MARIA E. CRUZ, in their official capacities; and CARRIE DU BOIS, and SHAWNEECE STEVENSON, in their personal capacities,<br><br>        Defendants. | Case No.  3:24-cv-08015-MMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Judge: Hon. Maxine Chesney<br><br>Trial:             August 24, 2026<br>FAC Filed:     September 17, 2025<br>Complaint Filed:  November 15, 2024 |

1

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................ 2

TABLE OF AUTHORITIES ......................................................................................... 3

INTRODUCTION ........................................................................................................ 7

ARGUMENT ............................................................................................................... 7

I.  THE FOURTH CLAIM OF ACTION FOR VIOLATION OF FREE SPEECH,
   AND THE THEORIES ON WHICH IT IS BASED, SHOULD BE DISMISSED .......... 7

    A.  Plaintiffs Do Not Establish Standing Or The Existence Of A Live Claim
        For Prospective Relief ................................................................................ 7

    B.  Neither Exposing Plaintiffs To Content Offensive To Them Nor Testing
        Them On It Supports A Free Speech Claim ................................................ 9

II.  THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE
   TO STATE A FREE EXERCISE CLAIM ............................................................... 11

III.  THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED FOR
   FAILURE TO STATE AN EQUAL PROTECTION CLAIM ...................................... 14

    A.  Equal Protection May Not Be Used To Attack Instruction ................................... 14

    B.  Each Plaintiff Fails To Allege Facts To State An Equal Protection Claim .......... 15

IV.  THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE
   TO STATE A TITLE VI CLAIM ............................................................................ 17

V.  CLAIMS AGAINST DISTRICT-LEVEL ADMINISTRATORS AND BOARD
   MEMBERS SHOULD BE DISMISSED ................................................................ 18

VI.  CLAIMS AGAINST GRUSZYNSKI AND KADDOURA SHOULD BE
   DISMISSED ........................................................................................................ 20

VII.  PLAINTIFFS FAIL TO ALLEGE FACTS TO SUPPORT PUNITIVE
   DAMAGES .......................................................................................................... 20

VIII.  LEAVE TO FURTHER AMEND IS NOT WARRANTED ....................................... 21

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Bautista v. Los Angeles Cnty.*,
  216 F.3d 837 (9th Cir. 2000)................................................................................... 14

5

6

*Beckham v. Evanston Ins. Co.*,
  2021 WL 3173188 (N.D.Cal. July 27, 2021) ........................................................... 20

7

*Brooks v. City of San Mateo*,
  229 F.3d 917 (9th Cir. 2000)................................................................................... 16

8

9

*C.F. v. Capistrano Unified Sch. Dist.*,
  654 F.3d 975 (9th Cir. 2011).........................................................................9, 10, 12

10

*California Parents for the Equalization of Educ. Materials v. Noonan*,
  600 F.Supp.2d 1088 (E.D. Cal. 2009) ..................................................................... 14

11

12

*California Parents for the Equalization of Educ. Materials v. Torlakson*,
  973 F.3d 1010 (9th Cir. 2020) ........................................................................... 12, 14

13

*Campos v. Arizona Bd. of Regents*,
  2025 WL 2107635 (D.Ariz. July 28, 2025) ............................................................. 19

14

15

*Canel v. Art Inst. of Chicago*,
  2025 WL 564504 (N.D.Ill. Feb. 20, 2025) ............................................................... 20

16

*Concerned Jewish Parents & Tchrs. of Los Angeles v. Liberated Ethnic Stud.*
  *Model Curriculum Consortium*,
  2024 WL 5274857 (C.D.Cal. Nov. 30, 2024) ...................................... 10, 13, 14, 15

17

18

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ................................................................................................ 17

19

*DeSoto v. Yellow Freight Sys.*,
  957 F.2d 655 (9th Cir. 1992) ................................................................................... 21

20

21

22

*E.M. v. California Dep't of Educ.*,
  2025 WL 1883826 (N.D.Cal. July 8, 2025) ............................................................. 18

23

*E.M. v. California Dep't of Educ.*
  2025 WL 4065370 (N.D.Cal. Nov. 12, 2025) .......................................................... 16

24

25

*EEOC v. Joe's Stone Crab, Inc.*,
  220 F.3d 1263 (11th Cir. 2000) ............................................................................... 17

26

27

28

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA  94704

DWK 4528825v6

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

*Felarca v. Birgeneau*,
    891 F.3d 809 (2018) ........................................................................................ 19

*Felber v. Yudof*,
    851 F.Supp.2d 1182 (N.D.Cal. 2011) ............................................................. 16

*Gibson v. City of Portland*,
    __ F.4th __ (9th Cir. 2026) 2026 WL 235118 .................................................. 16

*Hart v. City of Redwood City*,
    99 F.4th 543 (9th Cir. 2024) ........................................................................... 11

*Hazelwood Sch. Dist. v. Kuhlmeier*,
    484 U.S. 260 (1988) ........................................................................................ 13

*Head v. Bd. of Trustees of Calif. State Univ.*,
    315 F. App'x 7 (9th Cir. 2008) ........................................................................ 11

*Kaahumanu v. Cnty. of Maui*,
    315 F.3d 1215 (9th Cir. 2003) ......................................................................... 19

*Kanelos v. Cnty. of Mohave*,
    893 F.2d 1001 (D.Ariz. 2012) ......................................................................... 19

*Kelley v. Corr. Corp. of Am.*,
    750 F.Supp.2d 1132 (E.D.Cal. 2010) ............................................................. 20

*L.T. v. Eleanor Murray Fallon Middle Sch.*,
    2024 WL 3678014 (N.D.Cal. Aug. 5, 2024) .................................................. 16

*Landau v. Corp. of Haverford Coll.*,
    780 F. Supp.3d 548 (E.D.Pa. 2025) ......................................................... 17, 20

*Landau v. Corp. of Haverford Coll.*,
    789 F. Supp.3d 401 (E.D.Pa. 2025) ......................................................... 16, 18

*Mandel v. Bd. of Trs. of California State Univ.*,
    2018 WL 5458739 (N.D.Cal. Oct. 29, 2018) ............................................ 16, 18

*Miller v. Monroe Sch. Dist.*,
    159 F.Supp.3d 1238 (W.D.Wash. 2016) ........................................................ 19

*Monteiro v. Tempe Union High Sch. Dist.*,
    158 F.3d 1022 (9th Cir. 1998) ....................................................... 13, 14, 15, 17

*Murguia v. Langdon*,
    61 F.4th 1096 (9th Cir. 2023) ......................................................................... 18

*Myles v. W. Contra Costa Unif. Sch. Dist.*,
    2024 WL 1354440 (N.D.Cal. Mar. 28, 2024) ................................................ 18

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

DWK 4528825v6

*O'Handley v. Padilla,*
    579 F.Supp.3d 1163 (N.D.Cal. 2022) ................................................................ 8

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ........................................................................................... 8

*Parents Involved in Comm. Schs. v. Seattle Sch. Dist. No. 1,*
    551 U.S. 701 (2007) ........................................................................................... 8

*Planned Parenthood of S. Nevada, Inc. v. Clark Cnty. Sch. Dist.,*
    941 F.2d 817 (9th Cir. 1991) ............................................................................ 13

*Preschooler II v. Clark Cnty. Sch. Bd. of Trs.,*
    479 F.3d 1175 (9th Cir. 2007) .......................................................................... 18

*Roe v. Gustine Unif. Sch. Dist.,*
    678 F.Supp.2d 1008 (E.D. Cal. 2009) ............................................................. 18

*Sabra v. Maricopa Cnty. Comm. Coll. Dist.,*
    479 F.Supp.3d 808 (D.Ariz. 2020) ............................................................. 9, 12

*Sabra v. Maricopa Comm. Coll. Dist.,*
    44 F.4th 867 (9th Cir. 2022) ...................................................................... 10, 12

*Searcey v. Harris,*
    888 F.2d 1314 (11th Cir. 1989) ........................................................................ 13

*Smith v. City of Marina,*
    709 F.Supp.3d 926 (N.D.Cal. 2024) ............................................................... 18

*Taylor v. List,*
    880 F.2d 1040 (9th Cir. 1989) .......................................................................... 18

*U.S. v. Ballard,*
    322 U.S. 78 (1944) ........................................................................................... 10

*U.S. v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ............................................................................. 8

*Walsh v. Tehachapi Unif. Sch. Dist.,*
    827 F.Supp.2d 1107 (E.D.Cal. 2011) .............................................................. 15

*Whitaker v. Garcetti,*
    486 F.3d 572 (9th Cir. 2007) ........................................................................... 14

*Wood v. Arnold,*
    915 F.3d 308 (4th Cir. 2019) ............................................................... 10, 11, 12

*Zeno v. Pine Plains Central Sch. Dist.,*
    702 F.3d 655 (2d Cir. 2012) .............................................................................. 9

Dannis Woliver Kelley
2087 Addison Street, 2nd Floor
Berkeley, CA 94704

5

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

1

**State Cases**

2

*Leeb v. DeLong,*
    198 Cal.App.3d 47 (1988) ................................................................................. 13

3

*Smith v. Novato Unif. Sch. Dist.,*
    150 Cal.App.4th 1439 (2007) ............................................................................ 13

4

5

**Constitutional Provisions**

6

First Amendment ................................................................................................. 10, 13

7

**State Statutes**

8

California Education Code section 48907 ................................................................. 13

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dannis Woliver Kelley
2087 Addison Street, 2nd Floor
Berkeley, CA 94704

DWK 4528825v6

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**INTRODUCTION**

The Amended Complaint (AC) explains Plaintiffs' viewpoints about what it means to be Jewish and points to incidents involving various Plaintiffs, Defendants, school sites, and time periods which they assert is sufficient for relief. As with the original complaint, however, the AC fails to link particular actions by specific individuals to injuries to individual Plaintiffs, and where it attempts to do so, the claims it advances are not supported by law.

Defendants' Motion to Dismiss explains the multiple grounds on which the AC should be dismissed: exposure, instruction, and even testing on content which does not align with a student's beliefs is not actionable; Equal Protection and Title VI claims require each Plaintiff to allege cognizable harm based on the direct involvement of each Defendant; and many of the Plaintiffs lack standing to bring their claims. Recognizing these flaws, Plaintiffs' Opposition withdraws all individual claims of Sam Kasle, Andrea Kasle, Scott Lyle, and Lori Lyle, as well as the Title VI claims of Adam Lyle, Olivia Rief, Dina Berg, and Omer Beck. It maintains, however, that the AC is otherwise sufficient to withstand dismissal, or that Plaintiffs should be provided leave to amend in an unspecified manner.

As explained below, the remaining claims still do not state claims for relief or are non-justiciable. Plaintiffs' disagreement with instruction is not appropriate for judicial resolution, the AC's attempt to aggregate claims beyond the personal knowledge of individual Plaintiffs and across all Defendants finds no support in the law, and the Opposition fails to demonstrate that Defendants with little to no direct involvement in the alleged incidents should be subject to liability, particularly punitive damages. Accordingly, Defendants respectfully request that the Court dismiss the AC without leave to amend.

**ARGUMENT**

I.    **THE FOURTH CLAIM OF ACTION FOR VIOLATION OF FREE SPEECH, AND THE THEORIES ON WHICH IT IS BASED, SHOULD BE DISMISSED**

    A.    **Plaintiffs Do Not Establish Standing Or The Existence Of A Live Claim For Prospective Relief**

L.K. seeks damages, and CJP seeks injunctive and declaratory relief for violation of the

7

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

DWK 4528825v6

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

1  Free Speech Clause, both based on L.K.'s experience in Gruszynski's World History class in the

2  fall of 2023. (AC, ¶¶235, 238.) Although not pled in the AC, Plaintiffs contend in their

3  Opposition that L.K. also seeks prospective relief, despite her transfer to Sequoia High School

4  and her imminent graduation. (Opp., 10-11, fn.8; AC, ¶238; Hansen Decl., ¶6.)[1] But neither of

5  these Plaintiffs may seek prospective relief.

6         First as to CJP, neither the AC nor the Opposition provides facts showing any member is a

7  student who is now taking or is imminently likely to take Gruszynski's class and be exposed to

8  the same lessons and class discussion L.K. participated in, and no facts are pled to show

9  Gruszynski's objectionable behavior is ongoing. (AC, ¶98, Ex. 4 [final exam dated 2023].)

10  Plaintiffs' conclusory allegations of continuing violations do not suffice. (*O'Shea v. Littleton*, 414

11  U.S. 488, 497 (1974) (allegations lacking "sufficient immediacy and reality" do not support

12  jurisdiction).) This case is nothing like *Parents Involved in Comm. Schs. v. Seattle Sch. Dist. No.*

13  *1*, 551 U.S. 701 (2007), which involved the standing of a parent's organization to challenge an

14  ongoing policy under which all students were classified by race and forced to compete for

15  admission on that basis. *Id*. at 718-19. *Parents Involved* has no bearing on CJP's standing, which

16  bases its case on random incidents affecting particular students at two schools during discrete

17  time periods in the past. No connection between CJP's members and Gruszynski is pled.

18         As to L.K., Plaintiffs argue her prospective relief claim is not moot, because "a student's

19  internal transfer does not eliminate the threat of future injury where the underlying systemic

20  indifference and hostile environment persists," and because the violation is capable of repetition

21  yet evading review.  First, the assertion that she could in the last four months of her high school

22  career be enrolled in a different class in another school where a new teacher might expose her to

23

24  ─────────────

25  [1] Defendants moved to dismiss under FRCP 12(b)(1) for lack of jurisdiction and 12(b)(6) for
   failure to state a claim. Their challenge to jurisdiction was both facial and factual. In a factual

26  challenge, "courts may consider evidence like declarations submitted by the parties, and the party
   opposing the motion to dismiss has the burden of establishing subject matter jurisdiction by a

27  preponderance of the evidence." *O'Handley v. Padilla*, 579 F.Supp.3d 1163, 1178 (N.D.Cal.
   2022), aff'd, 62 F.4th 1145 (9th Cir. 2023). In a factual challenge, the court may consider the

28  complaint, including exhibits, facts incorporated into the complaint, and matters subject to
   judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

1   information about Israel that she disagreed with is far too speculative to confer standing,

2   particularly as against Gruszynski and those alleged to have allowed his conduct to occur. L.K.

3   has no more personal stake in bringing such a conjectural claim than any other student.[2] Second,

4   L.K.'s transfer (and her eventual graduation) moots her claims. *Sabra v. Maricopa Cnty. Comm.*

5   *Coll. Dist.*, 479 F.Supp.3d 808, 815 (D.Ariz. 2020) (no prospective relief to challenge course after

6   completion). The capable of repetition yet evading review exception does not help. "That

7   exception … is limited to extraordinary cases in which (1) the duration of the challenged action is

8   too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the

9   plaintiff [ ] will be subjected to the same action again." *C.F. v. Capistrano Unified Sch. Dist.*, 654

10  F.3d 975, 983 (9th Cir. 2011), quoting *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th

11  Cir.1999) (en banc). Because L.K. completed 10th grade World History, transferred to another

12  school, and is about to graduate, there is no reasonable probability she will be subject to the same

13  action again, and there is no evidence that the issues she raises will evade future review.

### B.    Neither Exposing Plaintiffs To Content Offensive To Them Nor Testing Them On It Supports A Free Speech Claim

16  Plaintiffs concede that exposure to racially or religiously offensive material in a lesson is

17  not unconstitutional when part of the curriculum.  But they try to dodge this by arguing that L.K.

18  was not just exposed to objectionable lessons, she was coerced into adopting the instructor's

19  views by being tested on the material he taught. This is a distinction without a difference.  If it is

20  not unconstitutional to teach material that may offend, then it is not unconstitutional to require

21  students to complete assignments or tests about the same material they have been taught. The

22  Ninth Circuit noted in *C.F.*, that "the freedom to have a frank discussion about the role of religion

23  in history is an integral part of any advanced history course," and that the court "must be careful

24  not to curb intellectual freedom by imposing dogmatic restrictions that chill teachers from

25  adopting the pedagogical methods they believe are most effective." *C.F.,* 654 F.3d at 988. Tests

---

[2] Plaintiffs' citation to *Zeno v. Pine Plains Central Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012) for the proposition that their "systemic" allegations of hostile environment give L.K. prospective relief standing is confounding. *Zeno* is a Title VI case involving one student at one school who was awarded damages, not injunctive relief.

9

and assignments are clearly among the "pedagogical methods" that teachers may choose to implement curriculum.

An attempt to litigate curricular material based on its offensiveness to a particular group will conflict with the First Amendment because of the chilling effect on speech and academic freedom. *C.F.,* 654 F.3d at 988; *Concerned Jewish Parents & Tchrs. of Los Angeles v. Liberated Ethnic Stud. Model Curriculum Consortium*, 2024 WL 5274857 at *21-22 (C.D.Cal. Nov. 30, 2024), citing *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1028 (9th Cir. 1998). Contrary to Plaintiffs' arguments, this extends not just to litigation about the choice of curriculum but also to how it is implemented.

> Determining the content of curricula is a complicated, important matter, and it is for this reason that school boards generally retain broad discretion in doing so, . . . and that teachers must have some discretion and academic freedom *in implementing and teaching* the curriculum. . . . It would be of great concern for the educational project and for academic freedom if every offended party could sue every time they did not like a curriculum *or the way it was taught.*

*Concerned Jewish Parents*, 2024 WL 5274857 at *22 (emph. added). More explicitly, the Ninth Circuit held in *Sabra v. Maricopa Comm. Coll. Dist.*, 44 F.4th 867 (9th Cir. 2022) that the academic freedom that protects a professor's right to teach controversial subjects

> . . . *plainly extends to testing students on what they were taught*, even if it only concerns the professor's opinions and not demonstrable facts. Were this not the case, judges and juries would be given the power to decide which opinions are too 'hostile' or 'denigrating' to a religion . . . .

*Id.* at 895 (emph. added). Moreover, litigating over the "correct" way to teach about Israel – like whether a test question is so inaccurate as to violate a plaintiff's religious faith – is exactly the type of doctrinal dispute that courts must refrain from entering. *U.S. v. Ballard*, 322 U.S. 78, 86-88 (1944).

L.K.'s speech was also not compelled simply because Gruszynski's course was required. This case is indistinguishable from *Wood v. Arnold*, 915 F.3d 308 (4th Cir. 2019), abrogated on other grounds.  In *Wood*, a high school student in a mandatory course had to demonstrate on a worksheet his understanding of the "Five Pillars" of Islam, including that "There is no god but Allah and Muhammad is the messenger of Allah." Yet, the court found this to be an academic

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

10

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

exercise, not compelled speech. *Id*. at 312-13, 319. As in *Wood*, L.K. was not required to recite any religious prayers or engage in any devotional practices; indeed, the information the student in *Wood* was required to reflect back was of a more religious nature than the allegedly anti-Israel statements L.K. was exposed to, and yet no compelled speech was found. See also, *Head v. Bd. of Trustees of Calif. State Univ.*, 315 F. App'x 7, 8 (9th Cir. 2008) (no constitutional violation when conservative student required to take course that conflicted with his views and was criticized by the instructor).

Plaintiffs argue that no deference is owed to Defendants' academic interests because this case does not involve assignment of material deemed to have educational value; instead, the "at-issue materials were neither reviewed nor approved for use." (Opp., 20.) Yet, they also argue that L.K.'s speech was compelled exactly because "an important educational benefit" was conditioned "on the profession of a state-sanctioned viewpoint." (*Id*.)  Regardless of how Plaintiffs choose to categorize the materials, they cannot deny the materials were part of the curriculum, implemented as part of World History lessons on the Middle East, based on a pedagogical choice by a teacher. The cases do not restrict school discretion to textbooks or other formal materials, but rather include teacher supplemental materials, class discussions, slide presentations, worksheets, quizzes and final exams. *Monteiro's* admonition to quickly dispose of cases treading upon academic freedom would be meaningless, if Defendants were forced to litigate the educational value of their choices and how the materials were selected.

Plaintiffs fail to state a claim by L.K. based on Gruszynski's lessons and fail to show that Gruszynski's actions violated clearly established Free Speech rights sufficient to overcome qualified immunity, as is their burden. *Hart v. City of Redwood City*, 99 F.4th 543, 557 (9th Cir. 2024). Accordingly, the Fourth Claim for Relief and Defendant Gruszynksi should both be dismissed, as should all claims derived from Gruszynski's actions.

## II.    THE THIRD CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A FREE EXERCISE CLAIM

For the same reasons, Plaintiffs cannot establish that Gruszynski's lessons – or any of the other curriculum choices at issue – "exert[ed] a 'coercive effect' that 'operates against [them] in

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

the practice of [their] religion." (Opp., 16, quoting *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 223 (1963).) Simply put, being exposed to ideas in the classroom with which you disagree is not coercive, nor is being tested on those same ideas, as the district court squarely held in *Sabra*, 479 F.Supp.3d at 818 (test did not require student to adopt the views of the instructor but only demonstrate understanding of the materials taught; this "did not inhibit [the student's] personal worship in any way"). The Ninth Circuit affirmed on qualified immunity grounds in August 2022, noting it has "never held under comparable circumstances that a test requiring students to select answers in conflict with their personal religious convictions (or risk losing points) imposes a substantial burden on religious practice. Indeed, the most instructive authority we have identified goes the other way." *Sabra*, 44 F.4th at 889-92. Certainly, this was still the case when Gruszynski and the other teachers acted in 2023, and Plaintiffs cite nothing to the contrary. See also, *C.F.*, 654 F.3d at 986 ("We have little trouble concluding that the law was not clearly established at the time of the events in question — there has never been any reported case holding that a teacher violated the Establishment Clause by making statements in the classroom that were allegedly hostile to religion.").

Plaintiffs claim *Sabra* is inapposite because it took place at the college level, and the college, after a prompt administrative review, recognized the offending questions as inappropriate, credited the student for the missed questions, and removed them from future tests. (Opp. 17, citing *Sabra*, 44 F.4th at 876-77). But the "most instructive authority" the Ninth Circuit relied on was *Wood*, which involved a high school student who refused to complete an objectionable assignment resulting in a lower percentage grade despite parental complaints. (*Wood*, 915 F.3d at 313; *Sabra*, 44 F.4th at 890.)

Plaintiffs also attempt to distinguish *California Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1014 (9th Cir. 2020) by characterizing it as a "mere exposure" to curriculum case. But again, if a state-level curriculum framework that allegedly disparages a religion is not subject to challenge because it imposes no burden on religious exercise as was the case in *Torlakson* (*id.* at 1018), then teaching it in the classroom or testing students on it can impose no burden either.

12

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

1    Finally, Plaintiffs argue in a footnote that Chloe Gentile-Montgomery's Ethnic Studies

2    lesson in October 2023 must remain part of their suit because it is another example of the hostile

3    educational environment. (Opp., 17-18, fn.13.) But even assuming Plaintiffs could sue simply

4    over moral outrage regarding a single lesson in a course none of them were enrolled in, their

5    argument misses the point. Not only do Gruszynski and Gentile-Montgomery's lessons not

6    violate any Plaintiff's constitutional rights, but their statements also are shielded from liability as

7    constitutionally protected and thus cannot be considered in Plaintiffs' gestalt theory of

8    harassment. *Monteiro*, 158 F.3d at 1024, 1027-32 (removal of objectionable materials would

9    "unquestionably restrict the students' First Amendment freedoms" to read material the district

10   believed to be of legitimate educational value and "significantly interfere with the District's

11   discretion to determine the composition of its curriculum"); *Concerned Jewish Parents*, 2024 WL

12   5274857 at *21-22.

13   Plaintiffs' coercion argument falls further apart in the context of the Call to Change video.

14   Plaintiffs do not allege they were forced to recite information from the video in class or suffer a

15   loss of points. Instead, they claim Defendants were obligated to censor the "style and content" of

16   the student-produced video to ensure it did not burden their religious practice. (Opp., 19). There is

17   no legal support for this argument. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988),

18   allows, but not does not require school authorities to exercise editorial control over student

19   productions. Further, school district officials may not suppress a particular viewpoint on an

20   otherwise acceptable topic. *Planned Parenthood of S. Nevada, Inc. v. Clark Cnty. Sch. Dist*., 941

21   F.2d 817, 829 (9th Cir. 1991) (en banc); *Searcey v. Harris*, 888 F.2d 1314, 1325 (11th Cir. 1989)

22   ("we do not believe [*Hazelwood*] offers any justification for allowing educators to discriminate

23   based on viewpoint"). Moreover, *Kuhlmeier* is not the standard in California, where California

24   Education Code section 48907 gives student journalists broader First Amendment protections,

25   particularly from the viewpoint censorship Plaintiffs advocate. *Smith v. Novato Unif. Sch. Dist*.,

26   150 Cal.App.4th 1439, 1452 (2007); *Leeb v. DeLong*, 198 Cal.App.3d 47, 54 (1988) ("[t]he broad

27   power to censor expression . . . recognized in *Kuhlmeier* is *not available to this state's*

28   *educators*") (emph. original).

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

13

1       As to Omer Beck and Adam Lyle's participation in Freedom Club meetings, Plaintiffs

2   again fail to show coercion that substantially burdened their religious practice. The club meetings

3   they attended were voluntary, and neither attending club meetings nor taking notes in them is part

4   of any religious exercise. Failing to show the coercive burden they admit is required to establish

5   their claim, Plaintiffs instead argue that "a series of school-sponsored actions . . . collectively

6   exerted pressure on Jewish students to suppress their faith." (Opp., 17.) Plaintiffs offer no support

7   for how they can aggregate incidents affecting some (or none) of them to state a Free Exercise

8   claim for all of them. At best, some Plaintiffs were exposed to statements and ideas they found

9   offensive, but this fails to state a claim under the Free Exercise Clause.

## III.   THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE AN EQUAL PROTECTION CLAIM

12      Plaintiffs repackage the same claims under the Equal Protection Clause. To the extent

13  such claims are based on curriculum or instruction, the Call to Change video, or the Freedom

14  Club meetings, they may not proceed for the same reasons discussed above. Additionally,

15  Plaintiffs must individually allege how each Defendant intentionally discriminated against, or was

16  deliberately indifferent to, each Plaintiff. *Whitaker v. Garcetti*, 486 F.3d 572, 580 (9th Cir.

17  2007) ("[E]ach plaintiff must 'show that he personally has suffered some actual or threatened

18  injury as a result of the putatively illegal conduct of the defendant'"); *Bautista v. Los Angeles*

19  *Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000). Plaintiffs fail to meet this bar.

### A.   Equal Protection May Not Be Used To Attack Instruction

21      Given the foreclosure of Equal Protection claims against instruction in *Monteiro,*

22  *Torlakson,* and *Concerned Jewish Parents,* Plaintiffs attempt to recast the AC as an attack on the

23  actions of specific teachers. (Opp., 14.) They fare no better with this argument. Contrary to

24  Plaintiffs' assertions, the rules set forth in these cases are not limited to formal selection of

25  curriculum or materials by governing bodies. More broadly, they prevent Equal Protection claims

26  against "the educational materials . . .  students receive." *Torlakson,* 973 F.3d at 1018; *California*

27  *Parents for the Equalization of Educ. Materials v. Noonan,* 600 F.Supp.2d 1088 (E.D. Cal. 2009)

28  (applying same to classroom materials); *Concerned Jewish Parents,* 2024 WL 5274857 at *22

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA  94704

14

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

("teachers must have some discretion and academic freedom *in implementing and teaching* the curriculum).

Plaintiffs also attempt to distinguish *Monteiro* by suggesting their allegations fall within its reference to "racist actions on the part of teachers implementing a curriculum." *Monteiro,* 158 F.3d. at 1022. However, there is no meaningful distinction between the facts in *Monteiro* and Plaintiffs' allegations. In both cases, the students alleged that discussion of the curricular material in class would be racially offensive. *Id*. at 1024. And in both, plaintiffs alleged that curriculum and class discussion contributed to a racially hostile environment. In *Monteiro*, the student alleged that in addition to being assigned literary works containing racial epithets, she was "repeatedly called [the n-word]and other racial slurs by white students[,] . . . these insults were scrawled about the school in the form of graffiti[, and she] . . . complained to the appropriate authorities . . . but . . . the district refused to accept the complaints and furthermore refused to make any effort to halt the racist conduct;" further, the name calling "increased with frequency and intensity after the literary works were assigned." *Id*. at 1032, 1025. Moreover, Plaintiffs' narrow reading of *Monteiro* runs counter to the fundamental concern that instructors must retain discretion and academic freedom in "implementing and teaching the curriculum." *Concerned Jewish Parents,* 2024 WL 5274857 at *22.[3] Whether it is through Free Speech, Free Exercise, or Equal Protection, Plaintiffs may not seek judicial intervention "every time they did not like a curriculum or the way it was taught." *Id.*

**B.    Each Plaintiff Fails To Allege Facts To State An Equal Protection Claim**

In bringing an Equal Protection claim, each Plaintiff must allege that they individually experienced harassing conduct, directly or indirectly, that was sufficiently severe or pervasive to interfere with their educational activities. *Walsh v. Tehachapi Unif. Sch. Dist.,* 827 F.Supp.2d 1107, 1118 (E.D.Cal. 2011). Harassment directed at other individuals, of which Plaintiff is not aware other than through hearsay, rumor, or innuendo, and which does not deprive them of equal

---

[3] Although the *Monteiro* plaintiff suggested she could be removed from class discussion instead of banning the books outright, the Court found that this would only exacerbate its concerns about academic freedom and result in racial segregation. *Id*. at 1028, fn. 7.

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

1    educational opportunity, is insufficient. *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir.

2    2000); *Felber v. Yudof,* 851 F.Supp.2d 1182, 1187-88 (N.D.Cal. 2011). The Motion explains how

3    Plaintiffs' allegations miss this target. (Mot., 15-19.) Plaintiffs' response is to repeat all

4    allegations made by all Plaintiffs without delineating the conduct, or lack thereof, directed at each

5    Plaintiff or their personal knowledge of it. (Opp., 13-14.) This type of shotgun pleading fails to

6    meet Rule 8 standards. *Gibson v. City of Portland,* __ F.4th __ (9th Cir. 2026) 2026 WL 235118

7    at * 15-21(dismissing claims which incorporated entire complaint by reference, and combined

8    multiple plaintiffs and defendants, failing to link individual plaintiffs and defendants).

9           Finally, Plaintiffs argue that challenges to this claim are "premature, fact-intensive

10    questions . . . that cannot be resolved at this stage" citing *L.T. v. Eleanor Murray Fallon Middle*

11    *Sch.,* 2024 WL 3678014 (N.D.Cal. Aug. 5, 2024). However, *L.T.* did not involve an Equal

12    Protection claim against individuals (*id*. at *5) and the court's reluctance was in addressing the

13    defendants' attempt to dispute factual allegations made by Plaintiff (*id*. at *6). Defendants'

14    Motion does not dispute allegations, but asserts that even if accurate, the allegations do not state

15    an Equal Protection claim as a matter of law. (Mot., 16-19.) Courts regularly dismiss Equal

16    Protection claims on such grounds. *E.M. v. California Dep't of Educ*. 2025 WL 4065370, at *6

17    (N.D.Cal. Nov. 12, 2025) (dismissing claims of antisemitic discrimination where allegations fail

18    to meet "fairly high standard" of "deliberate indifference" as a matter of law); *Landau v. Corp. of*

19    *Haverford Coll*., 789 F. Supp.3d 401 (E.D.Pa. 2025) (*Landau II*) (granting motion to dismiss

20    Title VI hostile environment claim); *Mandel v. Bd. of Trs. of California State Univ*., 2018 WL

21    5458739 (N.D.Cal. Oct. 29, 2018) (same). The pleading flaws with this claim outlined in the

22    Motion warrant the same result here. (Mot., 14-20.) The allegations of the Plaintiffs, particularly

23    L.K., Olivia Reif, Dina Berg, Adam Lyle, Omer Beck, and CJP are insufficient to state an Equal

24    Protection claim against some, or all, of the Defendants as a matter of law and should be

25    dismissed for this reason.

26

27

28

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## IV.   THE FIRST CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A TITLE VI CLAIM

After the Opposition's withdrawal of claims, the only Plaintiffs proceeding under Title VI are CJP, L.K., S.B., and W.K. Plaintiffs concede that alleged harassment must be known to a plaintiff to form the basis for that plaintiff's claim. (Opp., 8-9, citing *Ellison v. Brady*, 924 F.2d 872, 878-79 (9th Cir. 1991) (plaintiff's perspective is central).) Plaintiffs are incorrect, however, in suggesting that "pervasive awareness" or "an interconnected District environment" is sufficient to permit aggregation. (Opp., 8-9.) *Landau v. Corp. of Haverford Coll.*, 780 F. Supp.3d 548, 559 (E.D.Pa. 2025) (*Landau I*) is directly on point. While aggregation may be appropriate where "a plaintiff shows that they were personally aware of the specific instances of harassment alleged by other[s]," "assertions of collective knowledge are insufficient to show individual knowledge on behalf of each Plaintiff." 780 F.Supp.3d at 559 (granting motion to dismiss).[4]  For example, the AC does not allege that L.K. was "personally aware" of the factual allegations beyond her interactions with Gruszynski (AC, ¶¶ 82-111), and as discussed above, her prospective relief claims against Gruszynski are moot. Plaintiffs' assertion that a district of over 10,000 students across 5 campuses is a single "interconnected … environment," allowing each Plaintiff to bring claims based on the experiences of others is undermined by *Landau I*, which rejected a similar argument in the context of 1,400 students on one campus. 780 F.Supp.3d at 559.[5] The inclusion of CJP as a party does not allow Plaintiffs to claim omniscience as to all incidents occurring throughout the District.

Plaintiffs W.K. and S.B. also fail to plead with specificity that Defendants' conduct had some concrete, negative effect on their education. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 654 (1999). Plaintiffs say the AC "details systemic injuries,

---

[4] Plaintiffs refer to a "pattern and practice" of antisemitism, but this is not a class action or a pattern and practice case, and if it was, Plaintiffs would require statistical evidence of discrimination along with anecdotal evidence of individual incidents showing the common pattern. *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1285-87 (11th Cir. 2000).

[5] Plaintiffs claim *Monteiro* allows a "hostile environment claim" based on acts "not . . . directed at a specific complainant" (Opp., p. 15), but this pleading error was not raised by defendants in that case and not addressed by the court.

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA  94704

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

including chilled speech, exclusion from school programing, recurring exposure to antisemitic epithets and graffiti, and psychological distress." (Opp., 4.) This response suffers from the same flaw; it aggregates alleged effects across all Plaintiffs. It also conflates the alleged harassment with the harm.  Examples of "concrete and negative" effects include "decline in grades, change of schedule in response to [harassment], and need for counseling and psychological care from the incidents. . . ." *Myles v. W. Contra Costa Unif. Sch. Dist.,* 2024 WL 1354440, *5 (N.D.Cal. Mar. 28, 2024). Neither W.K. or S.B. alleges such impacts. Plaintiffs' cases do not help them (Opp. 5, fn.5)[6], and more recent cases reject the "effects" Plaintiffs claim. (See Opp. 4-5; cf. *Landau II,* 789 F.Supp.3d at 423-24 [rejecting "generalized discomfort" or "self-censorship" as "concrete deprivation"]; *Mandel,* 2018 WL 5458739 at *25 [leaving a class, not participating in certain events insufficient].)

## V.    CLAIMS AGAINST DISTRICT-LEVEL ADMINISTRATORS AND BOARD MEMBERS SHOULD BE DISMISSED

Despite assertions to the contrary, Plaintiffs' claims against the District-level administrators and board members are clearly attempts to find them vicariously liable. The Opposition points to their limited allegations directly involving Leach, Hansen, Beal, and the Board that Defendants highlighted in their Motion. (Opp., 23-24.) For the reasons explained there, these minimal allegations of after-the-fact involvement are insufficient to show how these Defendants caused each Plaintiffs' injury. Indeed, most of the communications to these Defendants were made beginning in April 2024, *after* almost all the alleged acts occurred. *E.M. v. California Dep't of Educ.*, 2025 WL 1883826, *5 (N.D.Cal. July 8, 2025) (defendants could not have caused deprivation which occurred before they knew of circumstances).

Plaintiffs lump multiple administrators into the mix simply because they are potentially in the chain of command, but there is no individual liability under a "team effort standard that allows the jury to lump all the defendants together, rather than require it to base each individual's

---

[6] Only one of the cited cases addresses this element (*Roe v. Gustine Unif. Sch. Dist.,* 678 F.Supp.2d 1008, 1027 (E.D. Cal. 2009)), and it is factually distinguishable as the student there was the victim of several physical assaults and eventually withdrew from the school.

liability on his own conduct." *Smith v. City of Marina*, 709 F.Supp.3d 926, 933 (N.D.Cal. 2024) (simplified); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).[7] In an more extreme situation, university administrators, including those in the direct chain of command for university police, were not liable for injuries even when they acquiesced in the use of batons to effectuate removal of tents when they were aware that use of batons had resulted in injuries, because the claims against them lacked the required "decree of personal involvement or causal connection." *Felarca v. Birgeneau,* 891 F.3d 809, 820 (2018). The requirement that individual action has caused the plaintiff's harm is even more compelling in the case of the Board members.  Notice of a concern and failure to act on it does not create board member liability. *Miller v. Monroe Sch. Dist.,* 159 F.Supp.3d 1238, 1248 (W.D.Wash. 2016); *Kanelos v. Cnty. of Mohave,* 893 F.2d 1001, 1008 (D.Ariz. 2012).  Plaintiffs' allegations that the Board failed to make changes to the curriculum following two communications and public comments do not provide the requisite individual action for liability to attach. Plaintiffs fail to cite any case to the contrary. Moreover, Plaintiffs' discussion of legislative immunity (Opp., 24) makes Defendants' case: Plaintiffs' request to the Board that it prevent the use of allegedly antisemitic curriculum in the classroom falls squarely within legislative immunity. Under the *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220-24 (9th Cir. 2003) framework, legislative decision-making was clearly at issue. The only action the Board could take in response to Plaintiffs' requests would be to adopt a generally applicable policy or curriculum standard for instructional materials. Plaintiffs fail to articulate what administrative or ad hoc decision the Board could have made to resolve their curriculum concerns.

---

[7] Plaintiffs cite *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.,* 479 F.3d 1175, 1183 (9th Cir. 2007) to suggest that "administrative abdication," or minimal connection to the actions of others, is sufficient for liability. (Opp., 23.) The allegations here do not show "abdication", but in any event, *Preschooler II* has been narrowed and called into question on several occasions. *Murguia v. Langdon*, 61 F.4th 1096, 1108 (9th Cir. 2023) ("*Preschooler II* did not establish that the mere failure to perform a legally required act is grounds for § 1983 liability"); *Campos v. Arizona Bd. of Regents*, 2025 WL 2107635, *5 (D.Ariz. July 28, 2025).

19

Dannis Woliver Kelley
2087 Addison Street, 2nd Floor
Berkeley, CA 94704

## VI.    <u>CLAIMS AGAINST GRUSZYNSKI AND KADDOURA SHOULD BE DISMISSED</u>

Plaintiffs' sole basis to hold Gruszynski liable is the instruction he provided in the classroom. Plaintiffs argue that Gruszynski spoke as a public official in providing instruction and was required to follow the curriculum. (Opp. 21-22.) But this does not alter the fact that Gruszynski has no liability for providing instruction that L.K. found offensive. For the reasons discussed above and, in the Motion, Plaintiffs fail to state a claim as to his actions, lack standing to pursue prospective relief against him, and he is entitled to qualified immunity.

Plaintiffs' argument about Kaddoura's personal liability boils down to his removal of Beck from a Freedom Club meeting in fall 2024 because Beck made other students there uncomfortable, which they claim violates the Equal Protection Clause. (Opp., 22-23; AC, ¶ 144.) But these allegations are insufficient to state an Equal Protection violation by Kaddoura as to Beck (or any other Plaintiff). *Landau I*, 780 F.Supp.3d at 558 (neither "mere name calling or one-off instances of moderate bullying . . . , nor . . . simple disagreement with educators' management decisions" suffice to establish a violation). Further, Plaintiffs do not address that no other Defendant can be liable for Kaddoura's actions since no Plaintiff is alleged to have reported the incident to an official with the authority to remedy the situation. *Canel v. Art Inst. of Chicago,* 2025 WL 564504, *1 (N.D.Ill. Feb. 20, 2025) at *8, 10, n.6, 11-12, 14. Accordingly, Gruszynski and Kaddoura should be dismissed, and the claims against the other Defendants based on their actions must be dismissed as well.

## VII.    <u>PLAINTIFFS FAIL TO ALLEGE FACTS TO SUPPORT PUNITIVE DAMAGES</u>

Plaintiffs claim that dismissal of punitive damages is "improper at the pleading stage" because the court must engage in a "fact-intensive resolution." (Opp., 25.) Not so. Plaintiffs rely solely on conclusory allegations, seeking punitive for all Plaintiffs against all Defendants in boilerplate fashion. But "nothing more than [Plaintiffs'] bare characterization of [Defendants'] motives as evil" is insufficient to withstand a motion to dismiss. *Kelley v. Corr. Corp. of Am.*, 750 F.Supp.2d 1132, 1147-48 (E.D.Cal. 2010); *Beckham v. Evanston Ins. Co.,* 2021 WL 3173188, *4

DWK 4528825v6

(N.D.Cal. July 27, 2021).[8]

## VIII.   LEAVE TO FURTHER AMEND IS NOT WARRANTED

Plaintiffs seek leave to amend the AC without identifying *how* they would amend. This case has been pending since November 2024, and Plaintiffs have already had multiple opportunities to amend their lengthy complaint. A court "does not err in denying leave to amend where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Plaintiffs were previously made aware of the legal flaws raised in the Motion, specifically as to aggregation of claims. The fact that Plaintiffs have not already addressed these concerns and did not provide any details as to their proposed amendments suggests amendment would be futile.  Leave to amend should be denied.

DATED: January 30, 2026

DANNIS WOLIVER KELLEY
WILLIAM B. TUNICK
KEITH A. YEOMANS
ELLYN L. MOSCOWITZ
SUVARNA R. BHOPALE


By:   /s/ *William Tunick*
WILLIAM TUNICK
Attorneys for Defendants

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA  94704

---

[8] In their Opposition, Plaintiffs do not argue that the current or former Board members engaged in any conduct that would subject them to punitive damages; thus such damages against them should be dismissed.  (Opp., 25 ["*administrators and faculty*, despite actual knowledge of ongoing constitutional injuries, deliberately abdicated their remedial duties"] (emph. added).)

21

DWK 4528825v6