UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONCERNED JEWISH PARENTS OF SEQUOIA UNION HIGH SCHOOL DISTRICT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEQUOIA UNION HIGH SCHOOL, et al.,<br><br>Defendants. | Case No. 3:24-cv-08015-MMC   (KAW)<br><br>**ORDER REGARDING 2/13/26 JOINT DISCOVERY LETTER RE DEFENDANTS' REVIEW AND COLLECTION OF MOBILE DATA**<br><br>[Discovery Letter #3]<br><br>Re: Dkt. No. 142 |

On February 13, 2026, the parties filed a renewed joint discovery letter pertaining to Plaintiffs' request to compel a forensic collection and production of Defendants' mobile data. (Joint Letter, Dkt. No. 142.)

In sum, in May 2025, Plaintiffs served requests for production explicitly seeking Defendants' relevant short-message communications, including "text messages . . . , instant messages, [and] app-based messages." (Joint Letter at 1, Ex. 1 at 2-3.)  After months of meeting and conferring, Defendants insist on producing such communications based exclusively on self-collection by individual Defendants. (Joint Letter at 1.) In contrast, Plaintiffs propose that both sides undertake a counsel-directed, vendor-assisted, forensic collection of short-message data from agreed-upon custodians and data sources, using negotiated search terms. *Id.*  Before the Court is the question of which approach best ensures a complete, auditable, and proportional production given testimony that Defendants used short-message platforms for relevant communications.

### A.    Forensic Collection vs. Self-Collection

Defendants contend that Plaintiff's proposed forensic collection lacks proportionality and

consideration should be given to the invasiveness of cell phone imaging. (Joint Letter at 4.)

Instead, Defendants propose an "auditable [search] process" to be completed by:

>    (1) counsel asking each individual Defendant to confirm by declaration under penalty of perjury whether they send text messages (including SMS and MMS), instant messages, and app-based messages using any of the applications listed in Defendants' Messaging Search Protocol;

>    (2) for each individual Defendant, counsel will provide detailed instructions for searching each application which an individual Defendant indicates they use along with the search terms listed in Defendants' Messaging Search Protocol, counsel will confer with the appropriate technical experts if necessary to provide these search instructions, and individual Defendants will be informed that they should inquire with counsel if they have any questions or challenges in performing the search, such instructions will be made available to Plaintiffs' counsel upon request;

>    (3) each individual Defendant will provide any responsive messages, along with any other messages with the same recipient(s)/sender(s) from that day to counsel for review in a manner that allows counsel to identify the date, time, and recipient(s)/sender(s);

>    (4) each individual Defendant will provide a written declaration of this process and indicate that they have understood the process, completed the searches, and provided all responsive messages to counsel;

>    (5) Counsel will review messages provided and produce those which are responsive and subject to disclosure.

(Joint Letter at 4.)  The Court notes that Defendants' Messaging Protocol (Joint Letter, Ex. 3) includes 20 messaging platforms, including all platforms listed in Plaintiff's Proposed Protocol, as well as some additional platforms.  While Defendants contend that their search protocol builds in sufficient attorney supervision to comport with Federal Rule of Civil Procedure 34, the Court disagrees. (*See* Joint Letter at 4.)  On the contrary, the amount of attorney supervision over the search and production process falls below that contemplated by *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, No. 22-MD-03047-YGR (PHK), 2024 WL 4125618, at *14-16 (N.D. Cal. Sept. 6, 2024). In that case, the district court succinctly stated that "[c]ounsel in a litigation have legal duties to take proactive steps in supervising and searching for documents in discovery that go far beyond simply acceding to a client who fails (or worse, refuses) to produce or provide documents." *Id.* at *15.  "Counsel cannot simply advise clients

United States District Court
Northern District of California

about document requests and leave it up to the client to decide whether or not to risk sanctions for failure to produce – in appropriate circumstances, counsel may need to personally conduct or directly supervise a client's collection, review, and production of responsive documents." *Id.* Indeed, here, it is hard to fathom how counsel could adequately supervise what is essentially a manual collection of mobile data across 20 platforms for more than a dozen individual defendants. Additionally, as Plaintiffs argue, Defendants' protocol essentially makes the individual defendant responsible for determining whether a message is responsive, which is inappropriate. (*See* Joint Letter at 1.)

Next, Defendants argue that the imaging proposed is a significant intrusion in each individual's defendant's privacy, and courts have been careful to ensure that a party's right to discovery of cell phone information is proportional to the needs of the case. (Joint Letter at 5.)  In support of its position, Defendants cite *Henson v. Turn, Inc.*, 2018 WL 5281629, at *5 (N.D. Cal., Oct. 22, 2018). (Joint Letter at 5.)  In *Henson,* however, privacy concerns were implicated because the defendant wanted to be the party to image plaintiffs' devices. 2018 WL 5281629, at *5. Here, in contrast, Plaintiffs are requesting that Defendants be required to have their counsel lead the forensic collection of short-message data, and then produce responsive messages. (Joint Letter at 3.)  As a result, Plaintiffs' proposal does not involve the same privacy concerns.  Moreover, as Plaintiffs point out, Defendants' privacy argument conflates forensic collection with actual production. (*See* Joint Letter at 2.)

Accordingly, the Court finds that a properly scoped, counsel-led, forensic examination by Defendants is appropriate.[1] The parties are ordered to meet and confer regarding Plaintiffs' proposal.

### B.    Legislative Immunity

Finally, Defendants assert that the communications and thoughts of elected Board of Education members and senior officials are subject to legislative immunity and privilege. (Joint Letter at 5.)  Defendants cite *Community House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 960

[1] The Court notes that Plaintiffs are using this same method to produce responsive documents. (Joint Letter at 3.)

United States District Court
Northern District of California

(9th Cir. 2010) in support of its argument. In *Community House,* the Ninth Circuit considered four factors in determining whether an act was legislative in character: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 960 (9th Cir. 2010) (quoting *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (internal quotations omitted)).

In opposition, Plaintiffs make two arguments: (1) any legislative immunity would only attach to the elected members of the Board of Trustees; and (2) legislative immunity only attaches to actions taken in the sphere of legitimate legislative activity. (Joint Letter at 2 (citing *Kaahumanu,* 315 F.3d at 1219).) The immunity does not attach to actions that are administrative or executive. *Kaahumanu,* 315 F.3d at 1219. Plaintiffs contend this dispute does not implicate any legislative acts, so legislative immunity is no shield to the discovery requests. Defendants do not make a meaningful argument to explain why legislative immunity would apply.

Thus, the Court finds that legislative immunity would only potentially shield the elected Board of Trustees from imaging, and it would not protect senior officials. If forensic imaging reveals responsive messages that would be protected, Defendants can withhold them and provide a privilege log.

This resolves Dkt. No. 142.

IT IS SO ORDERED.

Dated: April 7, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

4