Ryan H. Weinstein (Cal. Bar No. 240405)
ryan.weinstein@ropesgray.com
ROPES & GRAY LLP
10250 Constellation Boulevard
Los Angeles, California 90067
Telephone: +1 310 975 3310
Facsimile: +1 310 975 3400

Lori Lowenthal Marcus*
lorilowenthalmarcus@deborahproject.org
Jerome M. Marcus*
jmarcus@deborahproject.org
THE DEBORAH PROJECT
P.O. Box 212
Merion Station, Pennsylvania 19066
Telephone: +1 610 880 0100
Facsimile: +1 610 664 1559

[Additional counsel on signature page]

Attorneys for Plaintiffs

* admitted pro hac vice

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCERNED JEWISH PARENTS OF SEQUOIA UNION HIGH SCHOOL DISTRICT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SEQUOIA UNION HIGH SCHOOL DISTRICT, *et al.*,<br><br>Defendants. | Case No. 3:24-cv-08015-MMC<br><br>**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE MINORS' COMPROMISE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Declaration of Ryan H. Weinstein and [Proposed] Order filed concurrently]<br><br>Hearing Date: July 10, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7, 19th Floor |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 10, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Maxine M. Chesney, United States District Judge, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff S.B., by and through her Guardians ad Litem, Igor and Marina Bershteyn, and Plaintiff W.K., by and through his Guardian ad Litem, Margarette Kesselman, will and hereby do move for an order approving the compromise of the claims of the minor Plaintiffs, S.B. and W.K., pursuant to Federal Rule of Civil Procedure 17(c).

This motion is made on the grounds that the settlement is fair and reasonable and in the best interests of the minor Plaintiffs. This motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Ryan H. Weinstein ("Weinstein Decl.") and the exhibits attached thereto, the [Proposed] Order submitted herewith, and upon the papers, records, and pleadings on file herein.

Defendants have confirmed their non-opposition to this motion and have authorized Plaintiffs' counsel to so represent to the Court. *See* Weinstein Decl. ¶ 11.

## Unopposed Request for Shortened Time

Plaintiffs respectfully request that this motion be heard on shortened time pursuant to Civil Local Rule 7-2(a). Good cause exists because: (1) the Settlement Agreement conditions payment on Court approval, *see* Weinstein Decl. Ex. 1 § 8.2; (2) S.B. and W.K. remain enrolled in District schools and will benefit from prompt implementation of the programmatic reforms; (3) no contested factual or legal issues are presented; and (4) no party is prejudiced by expedited consideration of this unopposed motion. Defendants do not oppose this request. Weinstein Decl. ¶ 11. Pursuant to Civil Local Rule 7-1(b), the parties respectfully submit that this matter is suitable for determination without oral argument. *See id.*

DATED:  June 5, 2026                    ROPES & GRAY LLP


By:  /s/ Ryan H. Weinstein
        Ryan H. Weinstein
        Amy Jane Longo
        David B. Hennes
        Gregg L. Weiner
        Alexander B. Simkin
        Elana M. Stern
        Hannah Shapiro
        Luke Colle
        Lauren C. Brady
        Laura Medina
        Lori Lowenthal Marcus
        Jerome M. Marcus

Attorneys for Plaintiffs

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................ i

TABLE OF CONTENTS ........................................................................................... iii

TABLE OF AUTHORITIES ..................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

Preliminary Statement ............................................................................................... 1

Factual Background ................................................................................................... 2

  A. The Hostile Environment Facing Jewish Students ...................... 3

  B. The Minor Plaintiffs' Experiences ............................................. 3

    1. Plaintiff S.B. ................................................................ 3

    2. Plaintiff W.K. .............................................................. 5

  C. The Settlement ......................................................................... 6

    1. Monetary Relief .......................................................... 6

    2. Programmatic Reforms .............................................. 6

    3. Retention of Jurisdiction. .......................................... 7

Argument ................................................................................................................... 8

 I. The Settlement Is Fair, Reasonable, and in the Minor Plaintiffs' Best Interests ..... 8

  A. The Facts of the Case Support Approval ................................... 8

  B. The Minors' Net Recovery Is Fair and Reasonable ................... 9

  C. Recovery in Similar Cases Supports Approval ......................... 10

 II. The Guardians Ad Litem Support the Settlement ................................. 10

 III. The Proposed Distribution of Settlement Funds Complies with California Law and Protects the Minors' Interests ......................... 11

Conclusion ................................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allison v. Gramercy YZE, LLC*,
2014 WL 12569372 (C.D. Cal. Dec. 9, 2014) ...............................................................3

*S.D. ex rel. Brown v. Moreland School District*,
No. 5:14-cv-00813-LHK (N.D. Cal. Nov. 25, 2014)......................................................10

*Dacanay v. Mendoza*,
573 F.2d 1075 (9th Cir. 1978) .....................................................................................8, 11

*F.E. v. Moreland Unified Sch. Dist.*,
2019 WL 1411235 (N.D. Cal. Mar. 28, 2019)..................................................................2

*G. McK. v. San Ramon Valley Unified School District*,
No. C-11-04661 (N.D. Cal. June 8, 2012) ......................................................................10

*L.P. v. Bella Mente Montessori Acad.*,
2023 WL 4908833 (S.D. Cal. Aug. 1, 2023) ....................................................................2

*Robidoux v. Rosengren*,
638 F.3d 1177 (9th Cir. 2011) .....................................................................................7, 8

*S.Z. v. Dublin Unified School District*,
No. 3:18-cv-04829-LB (N.D. Cal. Aug. 28, 2019).........................................................10

*Salmeron v. United States*,
724 F.2d 1357 (9th Cir. 1983) ...........................................................................................8

*T. v. Mt. Diablo Unified School District*,
No. 3:11-cv-03108-LB (N.D. Cal. May 4, 2012) ...........................................................10

*T.T. v. Mountain View Whisman School District*,
No. 18-cv-01452 NC (N.D. Cal. Oct. 29, 2018)..............................................................10

*Wilson v. Cal. Highway Patrol Officers Domby*,
No. 21-cv-03824-MMC, ECF No. 115, Order Deferring Ruling (N.D. Cal. Jan. 10,
2024) ................................................................................................................................12

**Statutes**

42 U.S.C. § 1983...............................................................................................................1, 2

ADA §504 and §1983 ..........................................................................................................10

Cal. Prob. Code §§ 3601, 3611 .....................................................................................12, 13

Cal. Prob. Code § 3611(a)..................................................................................................12

Civil Rights Act of 1964 Title VI ...................................................................................1, 2

**Other Authorities**

Cal. Rules of Court, Rule 7.953 ...................................................................................12, 13

Cal. Rules of Court, Rule 7.953(b) ...................................................................................12

Fed. R. Civ. P. 17(c) ...................................................................................................7, 11

Fed. R. Civ. P. 41(a)(1)(A)(ii) ...........................................................................................7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Preliminary Statement**

Plaintiffs S.B. and W.K. are minors who, together with their co-Plaintiffs, brought this action against Defendants Sequoia Union High School District (the "District") and various individual defendants, alleging that Defendants created a hostile learning environment for Jewish students through a pattern of antisemitic discrimination, harassment, and deliberate indifference. The Action asserts claims for violation of Title VI of the Civil Rights Act of 1964 and violations of the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983. On May 23, 2026, the Parties executed a Settlement Agreement and Mutual Release (the "Agreement") resolving all claims in the Action. Weinstein Decl. Ex. 1. Section 12.4 of the Agreement expressly conditions the Agreement upon and subjects it to approval of a Minor's Compromise by this Court. *Id.* § 12.4. Plaintiffs now seek the Court's approval of the settlement as it pertains to the minor Plaintiffs, S.B. and W.K.

The Agreement resolves this action in its entirety and provides S.B. and W.K.—who remain enrolled in District schools—with both monetary compensation and enforceable systemic reforms tailored to the specific harms they suffered. In addition to $325,000 in monetary compensation, the Agreement delivers programmatic reforms that directly address the conditions that harmed S.B. and W.K.: policy revisions explicitly prohibiting the antisemitism they experienced; enhanced complaint procedures ensuring their future reports will not be ignored as past complaints were; preclearance of instructional materials so that the antisemitic content to which students were subjected cannot recur; mandatory staff training to prevent the teacher misconduct both minors endured; curriculum enhancements integrating lessons on antisemitism into the very World History classes where indoctrination occurred; annual climate surveys to monitor whether Jewish students like S.B. and W.K. feel safe; and the appointment of an independent Neutral to oversee compliance through at least June 30, 2029.

Because S.B. and W.K. will continue attending District schools for at least part of the duration of the Agreement's term, the programmatic relief is not merely theoretical—it will reshape their day-to-day educational experiences. The net recovery to each minor Plaintiff, encompassing both

1

monetary compensation and these concrete reforms, is fair and reasonable in light of the facts of this case, the minors' specific claims, and recoveries in similar cases. Accordingly, the Court should approve the settlement.

### Procedural History

Plaintiffs initiated this action on November 15, 2024, alleging that Defendants created and maintained a hostile learning environment for Jewish students through a pattern of antisemitic discrimination, harassment, and deliberate indifference. Compl. ¶¶ 1–5, ECF No. 1. The parties thereafter engaged in discovery and motion practice.

On March 18, 2026, Plaintiffs filed the operative Second Amended Complaint ("SAC"), asserting claims under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*) and the First and Fourteenth Amendments to the United States Constitution (via 42 U.S.C. § 1983). ECF No. 152 ("SAC"). The SAC identifies as Plaintiffs Concerned Jewish Parents of Sequoia Union High School District ("CJP-SUHSD"); five student Plaintiffs who have since reached the age of majority—Leila Kasle, Adam Lyle, Olivia Reif, Dina Berg, and Omer Beck; and two minor Plaintiffs—S.B., by and through her Guardians ad Litem, Igor and Marina Bershteyn, and W.K., by and through his Guardian ad Litem, Margarette Kesselman. SAC ¶¶ 7–14.

On May 23, 2026, the parties entered into the Settlement Agreement to avoid the costs and uncertainties of continued litigation, without any admission of liability by any party. Weinstein Decl. Ex. 1, at 1–2. The Settlement Agreement is conditioned on the Court's approval of the minors' compromise. Weinstein Decl. Ex. 1 § 12.4.

### Factual Background

The following facts are drawn from the SAC's allegations, which the Court may consider in evaluating whether the settlement is fair and reasonable. *See F.E. v. Moreland Unified Sch. Dist.*, 2019 WL 1411235, at *1 n.2, *3 (N.D. Cal. Mar. 28, 2019) (accepting complaint's "allegations as true for the purposes of ruling on this motion" and evaluating fairness, among other things, "[i]n light of the facts of the case [and] the minor's claims against the Defendants"); *L.P. v. Bella Mente Montessori Acad.*, 2023 WL 4908833, at *1 (S.D. Cal. Aug. 1, 2023) (taking complaint's factual allegations "as true only to the extent the Court must consider the nature of Plaintiff's claims to evaluate the fairness

2

of the settlement"); *Allison v. Gramercy YZE, LLC*, 2014 WL 12569372, at *3-4 (C.D. Cal. Dec. 9, 2014) (court "reviewed the Complaint" and assessed the allegations to determine that the allocation of settlement proceeds among adult and minor plaintiffs was reasonable in light of the nature of each plaintiff's claims).

### A.    The Hostile Environment Facing Jewish Students

This action arose from SUHSD's "egregious failure to address a surge of antisemitism that has created a hostile learning environment for Jewish students." SAC ¶ 1. "District trustees, administrators, and certain teachers demonstrated deliberate indifference, denying Jewish students their constitutional and statutory right[s] to participate fully in the educational process free from discrimination and harassment." *Id.*

The crisis of antisemitic discrimination and harassment in District schools intensified dramatically after Hamas's October 7, 2023 massacre. SAC ¶¶ 34–35. Jewish students faced taunts, slurs, and hateful remarks, culminating in giant swastikas appearing on campus. SAC ¶¶ 44, 86, 155, 165, 184–185. Rather than addressing these escalating incidents, District officials shifted blame onto victims, refused to engage with concerned parents, and used superficial "investigations" to whitewash legitimate concerns. *Id.* ¶¶ 66–68, 142–143. Teachers and administrators not only failed to intervene to stop the harassment and discrimination, but in several instances, perpetuated it. *See, e.g.*, SAC ¶¶ 37–71, 165, 174–182 (teachers delivering antisemitic instructional materials and making taunting statements to students); *id.* ¶¶ 76–77, 92–96, 170 (administrators dismissing swastikas as "Buddhist" imagery, blaming a Jewish student for provoking his own harassment, and failing to take meaningful action in response to the "Call for Change" video). Jewish students were also advised to conceal their religious identity to avoid becoming targets. *Id.* ¶ 85.

### B.    The Minor Plaintiffs' Experiences

#### 1.    Plaintiff S.B.

S.B. is a Jewish student at Woodside High School represented by her Guardians ad Litem, Igor and Marina Bershteyn. SAC ¶¶ 9, 78. The SAC alleges that S.B. was subjected to repeated antisemitic harassment: students said Jewish people should return to ghettos, expressed excitement at what they thought was a swastika, yelled "Go back to where you came from!" at S.B. in the hallway, and later

3

hurled the slur "kike" at her as she left campus. *Id.* ¶¶ 79, 81, 86. The SAC further alleges that, after a student teaching assistant threatened that S.B. would "get what she deserved" if she continued wearing her Star of David necklace, S.B. reported the threat, but no Woodside administrator imposed consequences. *Id.* ¶ 85. After a March 19, 2024 slur incident, Defendant Vice Principal Charles Velschow promised that the lead perpetrator would not be placed in S.B.'s classes; nevertheless, S.B. and that student were assigned to the same AP Statistics class the following year. *Id.* ¶ 86.

The SAC also alleges that, after the October 7, 2023 Hamas massacre, a student etched a swastika on campus and the District dismissed it as "Buddhist" imagery inspired by Japanese anime, even though Defendant Vice Principal Wendy Porter later acknowledged that the student likely understood the symbol as an expression of Jew hatred. SAC ¶¶ 76–77, 84. On March 21, 2024, the District broadcast an antisemitic "Call for Change" video on screens throughout Woodside High School as part of its "TV Live" program. *Id.* ¶ 87. The video displayed signs stating "End all US aid to Apartheid Israel" and "There are no 2 sides to Genocide," communicating that opposition to "hatred" required opposition to Israel and its Jewish population. *Id.* The same day, the SAC alleges, a teacher, Defendant Abdulhadi "Hadi" Kaddoura, asked S.B. if she was Jewish because he could tell by her nose—a reference to antisemitic stereotypes about Jewish physical characteristics. *Id.* ¶ 91.

The SAC alleges that the hostile environment had concrete effects on S.B.'s education, safety, and religious expression. She experienced significant anxiety about attending school, particularly after the swastika incident and the "Call for Change" broadcast, and she stopped wearing her Star of David necklace because she feared for her physical safety. SAC ¶¶ 84, 211, 229. The school also allegedly suppressed S.B.'s efforts to commemorate the October 7 victims and hostages as "too political," while permitting pro-Palestinian activities and displays on campus. *Id.* ¶¶ 97-100. Her academic performance declined, her absences increased, she participated less in class and withdrew from school activities, and she required mental health counseling to address these traumatic experiences; all of which resulted in the denial of her equal access to the District's educational opportunities and benefits. *Id.* ¶¶ 84, 95–96, 207, 211.

### 2.   Plaintiff W.K.

W.K. is a Jewish student at Menlo-Atherton High School represented by his Guardian ad Litem, Margarette Kesselman.  SAC ¶¶ 10, 164.  The SAC alleges that W.K. faced repeated antisemitic harassment and discrimination while SUHSD administrators failed to protect him or take meaningful action.  *Id.* ¶ 164.  In or around September 2023, after learning that W.K.'s family is Jewish and that his grandfather had sought refuge during World War II, a long-term substitute biology teacher made Holocaust jokes directed at W.K. in front of other students.  *Id.* ¶ 165.  Days after the October 7 attack, students allegedly surrounded W.K., called him a "kike," said they hoped he and his family would "burn in hell," that "all Jews should die," and that there would be "a second Holocaust" with his family dying first.  *Id.* ¶ 168.

The SAC alleges that Menlo-Atherton administrators responded by blaming W.K. for provoking his own harassment, requiring him to meet with the perpetrator, and offering W.K.—not the perpetrator—the option to change classes.  SAC ¶ 170.  The SAC also alleges that an ethnic studies teacher presented antisemitic and ahistorical instructional materials, including imagery derived from Nazi propaganda depicting Jews as controlling world events, and that District officials closed ranks around the teacher rather than protecting Jewish students.  *Id.* ¶¶ 174–82. When W.K. tried to engage the teacher in a discussion about the presentation, the teacher dismissed him as a "biased Jewish freshman."  *Id.* ¶ 179.  W.K. later reported additional antisemitic harassment, including a student yelling "Free Palestine. Go Hamas" at the school track and another saying, "Oh my God, there's a Jew! Don't let him in here!" in the weight room; the SAC alleges that administrators again failed to conduct a meaningful investigation.  *Id.* ¶¶ 183–84.

The alleged harassment affected W.K.'s education, safety, and well-being.  The SAC alleges that he lost trust in administrators, came to view school as unsafe, and lived in fear of the next antisemitic encounter.  SAC ¶¶ 171–72, 187.  His academic performance declined, his athletic pursuits suffered, and he struggled to maintain a social life and friendships.  *Id.* ¶ 187.  As of the SAC's filing, no teacher had been disciplined for the alleged antisemitic conduct, and the District had not implemented new policies or training specifically addressing antisemitism.  *Id.* ¶ 197.

## C.    The Settlement

The Settlement Agreement combines monetary relief with programmatic reforms designed to address the hostile educational environment and to prevent recurrence. Weinstein Decl. Ex. 1 §§ 2–8.

### 1.    Monetary Relief

The District will pay $325,000 to resolve all claims for compensatory damages, emotional distress, other harms alleged in the Action, and attorneys' fees and costs. *Id.* § 8.1. The Settlement Amount will be divided equally among the seven student Plaintiffs, with each student—including S.B. and W.K.—receiving approximately $46,428. No attorneys' fees or costs will be deducted from any student's share. Plaintiffs' counsel, Ropes & Gray LLP and The Deborah Project, have represented Plaintiffs pro bono throughout this litigation, and no portion of the Settlement Amount will be paid to counsel as fees or costs. Weinstein Decl. ¶ 5. There are no medical expenses, liens, or claims for reimbursement to be paid from the settlement proceeds allocated to S.B. or W.K. *Id.* Each minor Plaintiff's net recovery equals the full gross amount allocated to that minor.

### 2.    Programmatic Reforms

The Settlement Agreement also provides the following programmatic relief:

- **Policy Revisions:** Within 30 days of the Effective Date, the District must revise its Board Policies to identify antisemitism expressly as a prohibited form of discrimination and incorporate the antisemitism definition and policy statement in Exhibit A. Weinstein Decl. Ex. 1 § 2.1; *id.* Ex. A.

- **Enhanced Complaint and Investigation Procedures:** The District must implement enhanced procedures for complaints of antisemitic conduct, modeled on Title IX-style processes and including the use of independent outside attorney-investigators. Weinstein Decl. Ex. 1 §§ 3.1–3.1.5.

- **Instructional Materials Preclearance:** Supplementary instructional materials addressing the Israel-Palestine Conflict must be submitted for preclearance by the Neutral or a Neutral-approved curriculum expert before classroom use. *Id.* § 4.1.

- **Mandatory Staff Training:** The District must provide antisemitism training for all administrators, teachers, coaches, and other personnel who work directly with students. *Id.* §§ 5.1– 5.1.4.

- **Curriculum Enhancement:** Beginning in the 2026–2027 school year, the District must integrate lessons on antisemitism into each World History class, including presentations from or about Holocaust survivors. *Id.* § 5.2.1.

- **Climate Surveys:** For each of the next three school years, the District must administer a climate assessment to all students in grades 9–12. *Id.* § 5.3.

- **Independent Neutral:** The Parties must jointly select an independent Neutral to oversee compliance during the Term. *Id.* §§ 6.1–6.2.

### 3.    Retention of Jurisdiction.

Within five business days after receipt of all payments due, the Parties shall execute and file a Joint Stipulation of Dismissal of the Action with Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Weinstein Decl. Ex. 1 § [X]. The Court shall retain jurisdiction to enforce the settlement for a period of three school years from the Effective Date. *Id.*

### Legal Standard

Federal Rule of Civil Procedure 17(c) gives district courts a "special duty" to safeguard the interests of minors. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). In the settlement context, that duty requires the Court to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). The Court must independently evaluate a compromise of a minor's claims to ensure the minor's interests are protected, even when the compromise has been recommended or negotiated by the minor's parent or guardian ad litem. *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983).

For a settlement of a minor's federal claims, *Robidoux* directs district courts to focus on whether "the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." 638 F.3d at 1181–82. The Court should evaluate each minor's net recovery without regard to the proportion of the total settlement allocated to adult co-plaintiffs or plaintiffs' counsel, whose interests the Court has no special duty to safeguard. *Id.* at 1182. If each minor's net recovery is fair and reasonable in light

of the minor's claims and recoveries in similar cases, the Court should approve the settlement as proposed. *Id.*

Although *Robidoux* addresses the review of monetary allocations, the Court's best-interests inquiry also permits consideration of non-monetary relief that directly benefits the minor. *See Dacanay*, 573 F.2d at 1080 ("[T]he court must base its approval upon the fact that the terms of the settlement are completely fair to the minor."). That consideration is especially important here because equitable relief and systemic programmatic reforms that the District has committed to implementing are central components of the settlement for S.B. and W.K., who remain enrolled in District schools.

**Argument**

**I.    THE SETTLEMENT IS FAIR, REASONABLE, AND IN THE MINOR PLAINTIFFS' BEST INTERESTS**

The Settlement Agreement should be approved because each minor Plaintiff receives a fair and reasonable net recovery when measured against the facts of the case, the minors' specific claims, the risks of continued litigation, and recoveries approved in similar cases.

**A.    The Facts of the Case Support Approval**

The SAC alleges serious harassment that materially affected both minors' education and well-being. S.B. and W.K. experienced severe, pervasive, and objectively offensive antisemitic harassment that denied them equal access to educational opportunities. SAC ¶¶ 207–11. Such conduct included swastikas on campus, *id.* ¶¶ 76–77; students calling Jewish students "kike" and saying "all Jews should die," *id.* ¶ 86; a teacher making Holocaust jokes to W.K., *id.* ¶ 165; teachers singling out Jewish students for hostile interrogation and public ridicule, *see id.* ¶¶ 95, 173, 179, 184; and antisemitic content broadcast to the student body, *id.* ¶ 87. S.B. and W.K. suffered declining academic performance, reduced classroom participation, withdrawal from school activities, and concealment of their Jewish identity. *Id.* ¶¶ 85, 170, 171, 173, 187. In addition, S.B. experienced increased absenteeism and the need for mental health counseling that led her parents to attempt to transfer her to another school. *Id.* ¶ 84.

At the same time, continued litigation would have presented meaningful risk. Emotional-distress injuries are inherently difficult to value and prove, and Plaintiffs would have had to establish

8

deliberate indifference, the severity and pervasiveness of the hostile environment, and liability against individual defendants who may have asserted qualified immunity defenses.  Weinstein Decl. ¶ 7.

The process that produced the Settlement Agreement further supports approval. The parties reached the settlement through arm's-length negotiations between experienced counsel over several months, after substantial discovery and motion practice. *Id.* ¶ 8.  The Guardians ad Litem participated in the process and were consulted at each stage regarding terms affecting their children. *Id.*  The settlement therefore reflects informed decision-making by those responsible for protecting the minors' interests.

**B.      The Minors' Net Recovery Is Fair and Reasonable**

Each minor Plaintiff will receive approximately $46,428. *Id.* ¶ 4. Because Plaintiffs' counsel served pro bono, no attorneys' fees or costs will be deducted from those amounts. *Id.* ¶ 4. Each minor's net recovery therefore equals the full gross amount allocated to that minor. That monetary recovery is fair compensation for the minors' emotional-distress claims, particularly given the uncertainty of continued litigation. *Id.* ¶ 6.

The monetary recovery is only part of the settlement's value. The Settlement Agreement also provides substantial programmatic relief directed at the conditions alleged to have harmed S.B. and W.K., including policy revisions expressly prohibiting antisemitism, enhanced complaint and investigation procedures, preclearance of instructional materials addressing the Israel-Palestine Conflict, mandatory antisemitism training, curriculum enhancements on antisemitism and the Holocaust, annual climate surveys, and independent Neutral oversight. Weinstein Decl. Ex. 1 §§ 2.1, 3.1, 4.1, 5.1, 5.2.1, 5.3, 6.1. Those provisions remain in effect through at least June 30, 2029, with extensions if the Neutral does not certify compliance with specified milestones. *Id.* §§ 1.8, 6.4, 6.6. For current District students like S.B. and W.K., the practical value of those reforms is substantial and directly tied to their day-to-day school experience.

The Court's retention of jurisdiction for three school years reinforces that practical value by providing an enforcement mechanism while S.B. and W.K. remain enrolled in District schools. *Id.* § 10.1.

9

### C.    Recovery in Similar Cases Supports Approval

Comparable school-related civil-rights settlements support approval. In *T. v. Mt. Diablo Unified School District*, No. 3:11-cv-03108-LB (N.D. Cal. May 4, 2012), the court approved a $29,000 settlement for a minor's civil-rights claims against a school district under the ADA, Section 504, and Section 1983, finding the amount "reasonable and the settlement to be in the best interest of all parties." *See* Dkt. No. 22. In *S.Z. v. Dublin Unified School District*, No. 3:18-cv-04829-LB (N.D. Cal. Aug. 28, 2019), the court approved a settlement providing educational services and $25,000 in fees and costs, finding the settlement reasonable. *See* Dkt. No. 49. In *S.D. ex rel. Brown v. Moreland School District*, No. 5:14-cv-00813-LHK (N.D. Cal. Nov. 25, 2014), the court approved a settlement providing an educational placement valued at approximately $137,340 and $60,000 in attorneys' fees, finding the terms "fair and reasonable in light of S.D.'s claims and the facts of the case." *See* Dkt. No. 41. The court in *G. McK. v. San Ramon Valley Unified School District*, No. C-11-04661 (N.D. Cal. June 8, 2012) did the same for a $22,800 award for "educational expenses incurred for Plaintiff" and other related occupational therapy and tutoring expenses. *See* Dkt. No. 27. And in *T.T. v. Mountain View Whisman School District*, No. 18-cv-01452 NC (N.D. Cal. Oct. 29, 2018), the court approved a $25,000 settlement where school district personnel were ordered to "provide specified special education training in the next year to all District personnel, employees, agents, and contractors." Dkt. No. 26.

These authorities support approval here. Each minor Plaintiff will receive meaningful monetary compensation, and the Settlement Agreement adds enforceable reforms designed to improve the school environment that S.B. and W.K. will continue to experience.  Taken together, the monetary and programmatic relief is fair, reasonable, and in the minors' best interests.

## II.    THE GUARDIANS AD LITEM SUPPORT THE SETTLEMENT

The parents of the minor Plaintiffs—Igor and Marina Bershteyn for S.B., and Margarette Kesselman for W.K.—have reviewed the Settlement Agreement, consulted with counsel, and consented to the settlement on behalf of their respective children.  Weinstein Decl. Ex. 1, at 16–17. Each Guardian ad Litem acknowledged reviewing and understanding the Agreement in its entirety and

10

having the opportunity to discuss its terms and legal effect with counsel. Weinstein Decl. Ex. 1 § 12.5. Each entered into the Agreement voluntarily and without fraud, duress, coercion, or overreach. *Id.*

The Guardians ad Litem for S.B. and W.K. fully understand that if the compromise proposed herein is approved by the Court and is consummated, the minor Plaintiffs will be forever barred from seeking any further recovery of compensation from Defendants regarding the claims asserted in this action. Weinstein Decl. ¶ 9. The Guardians ad Litem nonetheless recommend this compromise settlement to the Court as being fair, reasonable, and in the best interests of S.B. and W.K., and request that the Court approve this compromise settlement. *Id.*

The decision of a guardian ad litem "deserves some deference when a court is called on to approve a settlement." *Dacanay*, 573 F.2d at 1080. Here, the Guardians ad Litem determined, after consultation with experienced counsel, that the settlement is in the best interests of S.B. and W.K. The Court should give appropriate weight to that determination.

## III.    THE PROPOSED DISTRIBUTION OF SETTLEMENT FUNDS COMPLIES WITH CALIFORNIA LAW AND PROTECTS THE MINORS' INTERESTS

Although federal law governs approval of a minor's compromise under Federal Rule of Civil Procedure 17(c), federal courts generally require that claims by minors be settled in accordance with applicable state law. *See, e.g.*, *Wilson v. Cal. Highway Patrol Officers Domby*, No. 21-cv-03824-MMC, ECF No. 115, Order Deferring Ruling (N.D. Cal. Jan. 10, 2024); Rutter Group, Fed. Civ. Proc. Before Trial ¶ 15:138 (2025). With respect to the disposition of settlement proceeds, California law provides that the court must order that the money be deposited in an insured account in a financial institution in this state, or in a single-premium deferred annuity, subject to withdrawal only upon authorization of the court, unless the court determines that some other disposition is in the minor's best interests. Cal. Prob. Code §§ 3601, 3611. Where, as here, the total settlement amount to be paid to the minor exceeds $5,000, the proceeds must generally be deposited in a blocked account in an insured financial institution, subject to withdrawal only on authorization of the Court. Cal. Prob. Code § 3611(a); Cal. Rules of Court, Rule 7.953.

Pursuant to California Probate Code §§ 3601 and 3611, Plaintiffs propose depositing the settlement proceeds into Court-approved, blocked accounts to ensure the funds are preserved during the Plaintiffs' minority. Specifically, Plaintiffs propose the following allocations:

- **Plaintiff S.B.**: $46,428 to be deposited in an insured account at a California financial institution in S.B.'s name, subject to withdrawal only upon further order of this Court.

- **Plaintiff W.K.**: $46,428 to be deposited in an insured account at a California financial institution in W.K.'s name, subject to withdrawal only upon further order of this Court.

In compliance with California Rules of Court, Rule 7.953(b), acknowledgments of receipt will be filed with this Court within 60 days of the funds' deposition.

This arrangement satisfies the statutory mandates of the Probate Code and the Rules of Court. By restricting access to these insured accounts until the minors reach the age of majority—or until this Court otherwise directs—the proposed disposition ensures the integrity and preservation of the minors' recovery.

**Conclusion**

For the foregoing reasons, Plaintiffs S.B. and W.K., by and through their respective Guardians ad Litem, respectfully request that the Court approve the settlement on behalf of the minor Plaintiffs as set forth herein and enter the proposed order submitted herewith.

DATED:  June 5, 2026                    ROPES & GRAY LLP
                                        THE DEBORAH PROJECT


                                        By:   /s/ Ryan H. Weinstein
                                              Ryan H. Weinstein
                                              Amy Jane Longo
                                              David B. Hennes
                                              Gregg L. Weiner
                                              Alexander B. Simkin
                                              Elana M. Stern
                                              Hannah Shapiro
                                              Luke Colle
                                              Lauren C. Brady
                                              Laura Medina
                                              Lori Lowenthal Marcus
                                              Jerome M. Marcus

                                        Attorneys for Plaintiffs

13