# EXHIBIT 1

**<u>SETTLEMENT AGREEMENT AND MUTUAL RELEASE</u>**

This Settlement Agreement and Mutual Release (the "Agreement") is entered into as of May 23, 2026 (the "Effective Date") by and between Plaintiffs Concerned Jewish Parents of Sequoia Union High School District on behalf of itself and its members; Leila Kasle; S.B., a minor, by and through her Guardians ad Litem, Igor and Marina Bershteyn; W.K., a minor, by and through his Guardian ad Litem, Margarette Kesselman; Adam Lyle; Olivia Reif; Dina Berg; Omer Beck; Sam Kasle; Andrea Kasle; Scott Lyle; and Lori Lyle (collectively, "<u>Plaintiffs</u>"), on the one hand, and Defendants Sequoia Union High School District; Karen Van Putten; Charles Velschow; Wendy Porter; Gregory S. Gruszynski; Abdulhadi Kaddoura; Karl Losekoot; Crystal Leach; Bonnie Hansen; Todd Beal; Carrie Du Bois; Richard Ginn; Amy Koo; Sathvik Nori; Shawneece Stevenson; Mary Beth Thompson; and Maria E. Cruz (collectively, "<u>Defendants</u>"), on the other hand. Plaintiffs and Defendants are each referred to as a "<u>Party</u>" and collectively as the "<u>Parties</u>."

## RECITALS

WHEREAS, on September 17, 2025, Plaintiffs filed an amended complaint in *Concerned Jewish Parents of Sequoia Union High School District, et al. v. Sequoia Union High School District, et al.*, Case No. 3:24-cv-08015-MMC, in the United States District Court for the Northern District of California (the "Action");

WHEREAS, on March 18, 2026, Plaintiffs filed a second amended complaint in the Action;

WHEREAS, the Action alleges that Defendants created a hostile learning environment for Jewish students through a pattern of antisemitic discrimination, harassment, and deliberate indifference, and asserts claims for violation of Title VI of the Civil Rights Act of 1964; and violations of the First and Fourteenth Amendments to the U.S. Constitution (via 42 U.S.C. § 1983);

WHEREAS, in an effort to avoid the costs and uncertainties related to litigation, and without admission of liability by any Party, the Parties desire to settle and resolve fully and finally the Action and all claims asserted or that could have been asserted in the Action through the Effective Date on the terms set forth herein;

NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES, COVENANTS, AND UNDERTAKINGS SPECIFIED HEREIN AND FOR OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, AND WITH THE INTENT TO BE OBLIGATED LEGALLY, THE PARTIES AGREE WITH EACH OTHER AS FOLLOWS:

**AGREEMENTS, REPRESENTATIONS, AND COVENANTS**

**1.    DEFINITIONS**

1.1    "Antisemitism" or "Antisemitic" shall have the definition as set forth in Exhibit A.

1.2    "Complaint" shall be broadly defined to include any formally submitted Uniform Complaint Procedure ("UCP") complaint, or other written communication from parents of current students and/or from current students to District school-site administrators and/or District-level administrators raising concerns of antisemitic conduct, including but not limited to discrimination, harassment, intimidation, or bullying, which fall within the scope of Board Policy 1312.3 (Uniform Complaint Procedures).

1.3    "District" means Sequoia Union High School District and its schools, departments, employees, agents, and representatives acting in their official capacities.

1.4    "Israel-Palestine Conflict" shall be broadly defined to include the historical, political, social, cultural, or religious issues, events, or narratives involving the State of Israel, the Jewish people's historical and ongoing connection to the land of Israel, the Palestinian people, the disputed territories now commonly referred to as the West Bank and Gaza Strip, and any related actors, organizations, or events. This definition encompasses, but is not limited to, the origins, development, and ongoing aspects of the conflict, peace processes, international responses, and the lived experiences of affected populations.

1.5    "Neutral" means the independent third-party decisionmaker appointed under Section 6 of this Agreement with the authority described herein.

1.6    "School Day" means a business day for the District, where District personnel, teachers, administrators, staff, and students are in their respective offices or schools and classes are in session. "School Days" shall exclude, among other days, Saturdays and Sundays, federal holidays during which District offices and schools are closed, and school breaks (e.g., summer vacation, winter vacation, and spring break) during which District schools are closed.

1.7    "Supplementary Instructional Materials" means teacher-selected or teacher-created content, including but not limited to handouts, slides, articles, videos, external links, and similar content, but excluding quizzes, tests, or other materials used for student assessment. "Supplementary Instructional Materials" does not include any materials formally adopted or approved by the District or contained within textbooks or curriculum formally adopted or approved by the District.

1.8    "Term" means the period from the Effective Date through June 30, 2029. Specific provisions of the Agreement may continue beyond this date pursuant to Section 6.4.

**2.    POLICY REFORMS: ADOPTION, INCORPORATION, AND PUBLICATION**

2.1    **Policy Revisions.** Within 30 days of the Effective Date, the District shall revise its Board Policies addressing nondiscrimination, harassment, professional standards, student conduct, positive school climate, and hate-motivated behavior to: (a) explicitly identify Antisemitism as a prohibited form of discrimination; and (b) incorporate (through adoption as an exhibit to Board Policy 0410) the Antisemitism definition and policy statement in Exhibit A. Revisions shall be made consistent with the redlined version of the Board Policies set forth in Exhibit C.

    2.1.1    **Legal Challenges to Policies.** With respect to any legal challenge against the District concerning the references to or incorporation of Exhibit A in Board Policy during the Term: (i) the District shall not affirmatively seek or support the removal, modification, or invalidation of any such references or incorporation, whether through legal challenge or otherwise; (ii) the District shall provide written notice to Plaintiffs within five (5) business days of service of litigation or receiving notice of any other challenge and shall not object to Plaintiffs' intervention or participation in any such proceeding to the extent permitted by applicable law; and (iii) any modification, removal, or revision to the references to or incorporation of Exhibit A in Board Policy, whether resulting from a legal challenge or otherwise, shall be subject to mutual written agreement of the Plaintiffs or prior review and approval by the Neutral, except where such modification is compelled by a final court order.

    2.1.2    **Changes in California Law.** If changes to California law or guidance from the California Antisemitism Prevention Coordinator result in any portion of the Antisemitism definition and policy statement in Exhibit A becoming inconsistent with California law, the District's Board Policies may be modified to the extent necessary to ensure consistency with California law. Any such modification during the Term is subject to mutual written agreement of the Plaintiffs or prior review and approval by the Neutral.

2.2    **Publication and Notice.** Within 30 days of the Effective Date, the updated Board Policies set forth in Exhibit C shall be adopted at a public meeting of the Sequoia Union High School District Board of Trustees (the "Board"), in compliance with all required procedures regarding Board meetings, and posted on the District's website following adoption. Prior to the beginning of the 2026-2027 school year, the updated policies shall be incorporated into employee and student handbooks and codes of conduct, and subsequently distributed during orientation or other training sessions. The District shall provide notice of the updated policies to all students, families, and staff.

2.3    **Policy Enforcement.** Concurrent with the publication and notice described in Section 2.2, the District shall reaffirm that failure to comply with Board Policies and Administrative Regulations, as revised herein, may constitute grounds for

3

discipline consistent with law and applicable collective bargaining agreements. The District shall incorporate goals regarding implementation of these policies and creation of a safe learning environment into principal evaluations during the Term.

2.4     **Consistent Application of Student Expression and Student Club Policies.** The District shall consistently apply any policies applicable to evaluating student requests for commemorative activities, such as the distribution of symbolic items, posting of flags or flyers, or observance of moments of silence, as well as any policies applicable to student club operations, including opening membership to all students of the high school at which they operate and operating in compliance with District nondiscrimination policies.

3.     **ENHANCED COMPLAINT, INVESTIGATION, AND DECISION PROCESS**

3.1     **Enhanced Procedures.** For all Complaints as defined in Section 1.2, the District shall implement the following enhanced procedures (the "Enhanced Procedures"), modeled on Title IX-style processes:

    3.1.1     **Intake and Initial Steps.** Upon receipt of a Complaint, the District shall:

       (a)     within two School Days, acknowledge receipt of the Complaint in writing; offer supportive measures to the complainant; provide a copy of Board Policy 1312.3 (Uniform Complaint Procedures) and Administrative Regulation 1312.3 (Uniform Complaint Procedures); inform the complainant that the Complaint will be processed pursuant to the Enhanced Procedures; advise that such processing may take longer than 60 days; explain that the complainant may opt out of the Enhanced Procedures; and notify the complainant that declining to opt out constitutes written agreement to exceed the timelines set forth in Cal. Code Regs. tit. 5, § 4600 *et seq.*;

       (b)     if the complainant does not opt out of the Enhanced Procedures, within seven School Days, retain an independent outside attorney-investigator (the "Independent Outside Attorney-Investigator"); and

       (c)     if a Complaint is received at or near the end of the school year such that resolution would occur over the summer months when the District is not operating, nevertheless comply with this Section 3.1 and inform the complainant that complete resolution may not occur until the beginning of the following school year.

    3.1.2     **Selection of Independent Outside Attorney-Investigator.** The Independent Outside Attorney-Investigator shall be selected by the District from a panel mutually agreed by the Parties or approved by the Neutral upon request by the District, and who satisfies the following criteria, which shall be certified in writing prior to selection:

4

(a) **No Conflicts or Prior District Work.** The Independent Outside Attorney-Investigator, and their firm, shall not have provided legal services of any kind to the District, its Board, schools, or employees, within three (3) years of the date of the Complaint, other than serving as an Independent Outside Attorney-Investigator. The Independent Outside Attorney-Investigator must have no personal, financial, or professional conflict of interest, including familial or supervisory relationships with any Party, complainant, respondent, or material witness identified at the outset of the investigation. Any potential conflict must be promptly disclosed by the Independent Outside Attorney-Investigator to the parties to the Complaint and the Neutral, and the Neutral may direct replacement.

(b) **Qualifications and Training.** The Independent Outside Attorney-Investigator shall be a licensed attorney in good standing with substantial experience conducting impartial investigations of discrimination and harassment in educational or workplace settings and documented training on Title VI, investigative techniques, implicit bias, and hostile-environment assessments.

(c) **Structural Independence.** The Independent Outside Attorney-Investigator shall be independent of the District's decisionmaker(s) and shall not serve as an advocate for the complainant or the District or any other respondent during or after the investigation in the same matter.

3.1.3 **Investigator's Report.** The District shall instruct the Independent Outside Attorney-Investigator to conduct a prompt, thorough, and impartial investigation; collect and objectively evaluate all relevant evidence, both inculpatory and exculpatory; interview all relevant witnesses; and assess credibility without bias. The Independent Outside Attorney-Investigator shall issue a written report to the District with findings of fact, credibility determinations, and all evidence considered appended as exhibits within 30 business days of retention, absent good cause or written agreement by the complainant to extend the investigation and report delivery timeline. The District shall provide the complainant and any individual respondent with the Independent Outside Attorney-Investigator's report, subject to redactions or omissions required to protect the privacy of students and personnel under the Family Educational Rights and Privacy Act ("FERPA") and California law. The Independent Outside Attorney-Investigator and District shall comply with all requirements pertaining to the retention of investigative files, including without limitation California Code of Regulations, title 5, section 4631, and California Education Code section 234.1(f).

3.1.4 **Decision.** Within 30 business days of receiving the Independent Outside Attorney-Investigator's report, a separate independent decisionmaker (the

5

Neutral or a Neutral-approved delegate) shall issue a written determination, including findings of fact to support the determination(s), determination(s) for each allegation as to whether there was a violation of District policy or law, and any recommendations for remedies and corrective action. The decision shall be provided to the complainant, any individual respondent, and appropriate District officials.

3.1.5 **Appeal and Transparency.** A complainant or respondent may appeal a determination to the California Department of Education in accordance with Cal. Code Regs. tit. 5, § 4632 *et seq.*

3.2 **Applicability.** These Enhanced Procedures shall apply by default to all Complaints as defined in Section 1.2 received during the Term.

3.3 **Review of Prior Complaints.** Immediately following selection of a Neutral, the Neutral or the Neutral's approved delegate shall conduct a review of the District's processing of, responses to, and reports issued in response to: (a) the Uniform Complaint Procedure complaints filed on or about February 1, 2024, and April 22, 2024; and (b) the Request for Reconsideration of Instructional Materials dated January 27, 2024. The Neutral or the Neutral's delegate shall be provided with access to any information or individuals the Neutral or the delegate deems necessary to complete the review. Within 30 business days of beginning the review, the Neutral or the Neutral's approved delegate shall issue a written report addressing whether the District's processing of and response to these matters complied with then-applicable District policies and law. The report may include recommendations for systemic remedies and corrective action. The written report shall be provided to Plaintiffs and made available to the public upon request, with redactions or omissions required to protect attorney-client privilege, the privacy of students and personnel under FERPA and California law.

3.4 **Reporting.** The District shall provide quarterly reports to the Board summarizing Complaints and resolutions for the duration of the Term (the "Quarterly Complaint Reports") and shall maintain a public log of such Complaints. Such Quarterly Complaint Reports and log will comply with applicable student privacy laws.

**4. INSTRUCTIONAL MATERIALS: PRECLEARANCE AND PRODUCTION**

4.1 **Preclearance.** Except as to materials included in the curriculum repository established pursuant to Section 5.2.3, for the duration of the Term, all Supplementary Instructional Materials addressing or referencing the Israel-Palestine Conflict to be used in any District classroom shall be submitted for preclearance by the Neutral or a Neutral-approved curriculum expert no less than 5 business days prior to planned classroom use. Such Supplementary Instructional Materials may not be used in a classroom if the Neutral or Neutral-approved delegate determines that the Supplementary Instructional Materials do not comply with California Education Code section 51500 or the Board Policies as revised pursuant to Section 2.1 and Exhibit C of this Agreement.

6

4.2 **Inspection Process Administrative Regulation.** Within 30 days of the Effective Date, the District shall adopt Administrative Regulation 5020.1 (Instructional Materials Inspection Process) with the provisions set forth in Exhibit D.

4.3 **Production of Materials and Sources.** The District represents and warrants that, as of the Effective Date, it has produced all supplementary materials and sources requested by and in relation to Mr. Kasle's January 27, 2024 Request for Reconsideration relating to Gregory Gruszynski.

**5. TRAINING, EDUCATION, AND CLIMATE SURVEYS**

5.1 **Staff Training.** For the duration of the Term, the District shall provide mandatory Antisemitism training for District administrators, school-site administrators, teachers, coaches, long-term substitute teachers, and any other non-classroom-based District employees who work directly with students.

    5.1.1 **Required Content.** Training shall include, at a minimum: (a) the operational definition of Antisemitism as set forth in Exhibit A; (b) case studies from secondary school settings relating to Antisemitic harassment and discrimination, including applicable resources from the Department of Education's Office for Civil Rights;[1] (c) classroom facilitation strategies for controversial topics; (d) bystander intervention techniques; and (e) reporting and investigation duties for incidents of Antisemitism. Upon completion, participants should be able to: (a) identify contemporary forms of Antisemitism; (b) differentiate between examples of protected speech and unlawful harassment, including Antisemitic harassment as described in Exhibit A; (c) apply District policies in classroom and extracurricular contexts; and (d) implement supportive responses for impacted students.

    5.1.2 **Provider Criteria.** Training shall be designed and delivered by external providers (each, a "Training Provider") selected by mutual agreement of the Parties. Any Training Provider must be an educational, non-partisan organization with extensive familiarity and experience in providing training and educational programs in secondary institutions in California on Jewish history, Judaism, and modern manifestations of Antisemitism. Within 30 days of the Effective Date, the Parties shall agree on a Training Provider or Training Providers. If the Parties are unable to agree to a Training Provider, one may be appointed by the Neutral. The District shall not substitute internal staff or unvetted third parties in lieu of an agreed-upon or appointed Training Provider.

    5.1.3 **Training Cadence and Schedule.** All District and school-site administrators shall complete one two-hour (2-hour) session of mandatory Antisemitism training conducted by a Training Provider no later than

---

[1] *See, e.g.*, U.S. Department of Education, Office for Civil Rights, *Dear Colleague Letter* (May 7, 2024), https://www.ed.gov/media/document/dear-colleague-letter-protecting-students-discrimination-such-harassment-based-race-color-or-national-origin-including-shared-ancestry-or-ethnic.

7

December 31 of each school year and a second thirty-minute (30-minute) session no later than June 15 of each school year. All teachers, coaches, long-term substitute teachers, and other non-classroom-based District employees who work directly with students shall complete a one-hour (1-hour) session of mandatory Antisemitism training conducted by a Training Provider annually. Prior to September 1, 2026, the District shall coordinate with the Training Provider(s) to schedule the first mandatory training for all teachers, coaches, long-term substitute teachers, and other non-classroom-based District employees who work directly with students. Any teacher, coach, long-term substitute teacher, or other non-classroom-based District employee who works directly with students and who is hired after the training session in any given school year shall receive the required amount of training within 30 School Days of hire.

5.1.4   **Training Evaluation and Reporting.** The District shall administer post-training evaluations using Likert-scale measures and open-ended questions, or any other format approved by the Neutral upon request by the District, to assess effectiveness. Training completion shall be tracked by employee site and job classification. The District shall provide the Neutral with an annual summary of training completion rates and evaluation results, along with training agendas and materials.

5.2   **Student Curriculum and Programming.** For the duration of the Term, the District shall:

5.2.1   **Curriculum Enhancement.** Beginning in the 2026-2027 school year, the District shall integrate at least one lesson on Antisemitism and its modern manifestations into each World History class. The lessons shall address both historical and contemporary manifestations of Antisemitism, including but not limited to Antisemitism in the context of the Holocaust, and the ways in which Antisemitism manifests in school and social media environments. Within 30 days of the Effective Date, the Parties shall agree on a source or sources of lesson materials. If the Parties are unable to agree on a source, one may be approved by the Neutral. These curricular enhancements shall also include at least one presentation from or about a Holocaust survivor in each World History class.

5.2.2   **Student Anti-Hate Program.** The District shall organize mandatory student anti-hate programs on an annual basis that shall include content addressing contemporary Antisemitism as agreed upon by the Parties.

5.2.3   **Curriculum Repository.** The District shall create a publicly accessible webpage on its website to share with teachers which will contain a repository which may include supplemental resources from California Teachers Collaborative for Holocaust and Genocide Education, StandWithUs, CAMERA Education Institute, the United States Holocaust Memorial Museum, the American Jewish Committee, or any other source

agreed to by the Parties or approved by the Neutral, that teachers may use to enhance existing curriculum. Classroom use of these materials by teachers shall not be subject to the preclearance requirement of Section 4.1.

5.3 **Climate Surveys.** For each of the next three school years, the District shall develop and administer a climate assessment to all students in grades 9–12 to evaluate the school climate with respect to antisemitic discrimination and harassment. The climate assessment may be conducted as part of broader and/or ongoing assessments. The assessment will contain questions about students' knowledge of and experiences with Antisemitism at school, and their awareness of the District's procedures for reporting such incidents. The questions shall be approved by the Neutral. The assessment may be administered via written or electronic survey, provided that students are notified of a contact person, such as a counselor, should they wish to discuss the survey in person. All results shall be reported anonymously and in aggregated format. Following administration, the District will analyze the results and provide an anonymized public report summarizing its findings within 60 School Days of survey completion. The summary shall indicate the percentage of respondents who reported experiencing or witnessing discrimination, including antisemitic discrimination, and outline specific actions planned to address any identified systemic issues.

## 6. APPOINTMENT AND DUTIES OF NEUTRAL

6.1 **Appointment and Term.** Within 30 days of the Effective Date, the Parties shall jointly select a Neutral. The Neutral shall perform the duties set forth in this Agreement during the Term, which shall extend until the defined compliance milestones are met. The Neutral's reasonable fees and expenses shall be paid by the District.

6.2 **Scope of Authority.** The Neutral shall perform the duties set forth in this Agreement, which include: (a) acting as or designating an independent decisionmaker for Complaints processed pursuant to Sections 3.1–3.3; (b) reviewing or designating a Neutral-approved curriculum expert to review Supplementary Instructional Materials pursuant to Section 4.1; (c) receiving and reviewing all Quarterly Complaint Reports submitted to the Board during the Term; and (d) resolving disputes regarding the terms of this Agreement as set forth in Section 6.5.

6.3 **Access and Cooperation.** The District shall provide the Neutral timely access to records, staff, and campuses as reasonably necessary to fulfill their duties set forth in this Agreement, subject to FERPA and applicable privileges.

6.4 **Milestones and Certification.** Upon request by the District or Plaintiffs, the Neutral shall certify the District's full or partial compliance with the following milestones: (a) adoption and publication of policy revisions (Sections 2.1–2.3); (b) implementation of enhanced complaint procedures and compliance with processing deadlines (Section 3); (c) at least 95% annual staff completion of

9

required training, with satisfactory evaluation metrics (Section 5.1); and (d) administration and publication of climate survey results each year (Section 5.3). If any milestone is not certified by the Neutral at the end of the Term, the effectiveness of the section of the Agreement associated with that milestone shall be extended until the Neutral certifies compliance with that section.

6.5     **Dispute Resolution Protocol.** The Neutral shall receive and decide disputes arising under the Agreement on written submissions, unless the Neutral requests a conference. Prior to seeking the Neutral's involvement, a Party that believes there is a dispute under the Agreement shall provide written notice to the other Parties. If the Parties are unable to resolve a dispute within 15 School Days of the written notice, the Party that believes there is a dispute under the Agreement may bring the dispute to the Neutral for resolution. Decisions shall issue within 20 business days and any decisions pursuant to this Section 6.5 are final and binding. If a Party fails to comply with the Neutral's decision, the other Party may enforce the decision in a court of competent jurisdiction. Each Party shall bear their own costs and attorneys' fees associated with resolution of such disputes.

6.6     **Term.** Except as set forth in Section 6.4, the Agreement's programmatic provisions shall remain in effect for the Term, as defined in Section 1.8.

**7.     COMMUNICATIONS**

7.1     **District-wide Statement.** Within 30 School Days of the Effective Date, the District shall issue the District-wide statement attached hereto as Exhibit E to students, families, and staff.

7.2     **Confidentiality/Non-Disparagement.** This Agreement shall not impose confidentiality or non-disparagement provisions restricting the Parties from publicly speaking about the facts underlying the Action and their experiences.

**8.     MONETARY RELIEF AND FEES**

8.1     **Settlement Amount.** In full and final resolution of all claims for compensatory damages, emotional distress, other harms alleged in the Action, and attorneys' fees and costs, the District shall pay $325,000 ("Settlement Amount").

8.2     **Payment Mechanics; Wiring Instructions.** Within five (5) business days after the Court's approval of the Minor's Compromise pursuant to Section 12.4, Plaintiffs' counsel shall provide the District with completed IRS Form W-9s and written wiring instructions for each Plaintiff, or alternatively, for a client trust account designated by Plaintiffs' counsel. Within twenty (20) business days of receiving such wiring instructions, the District shall transmit the Settlement Amount by wire transfer to the designated account(s). The District shall email remittance advices to Plaintiffs' counsel on the date of transmission. Payments shall be deemed made upon confirmation of receipt by the receiving bank. The District shall bear any bank fees charged by the sending bank; each recipient shall bear any fees charged by the receiving bank.

10

9.    **RELEASES AND COVENANT NOT TO SUE**

9.1    **Release of Claims by Plaintiffs.** Upon receipt of the Settlement Amount described in Section 8.1, each Plaintiff, on behalf of themselves and their successors and assigns, hereby fully and finally releases and discharges Defendants and their respective past, present, and future officers, directors, trustees, employees, agents, representatives, attorneys, successors, and assigns (collectively, the "Defendant Released Parties") from any and all claims, liabilities, demands, actions, and causes of action, whether known or unknown, that were asserted or could have been asserted in the Action through the Effective Date.

9.2    **Release of Claims by Defendants.** Upon the Effective Date, each Defendant, on behalf of themselves and their successors and assigns, hereby fully and finally releases and discharges Plaintiffs and their respective past, present, and future officers, directors, trustees, employees, agents, representatives, attorneys, successors, and assigns (collectively, the "Plaintiff Released Parties") from any and all claims, liabilities, demands, actions, and causes of action, whether known or unknown, that were asserted or could have been asserted in the Action through the Effective Date.

9.3    **California Civil Code § 1542 Waiver.** Each Party certifies that it has read the provisions of California Civil Code Section 1542 and has consulted its own counsel regarding that section. Each Party waives any and all rights under California Civil Code Section 1542, which states:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each Party agrees and acknowledges that the released claims extend to and include unknown and unsuspected claims. Each Party has made such investigation of the facts pertaining to this Agreement and to the released claims as it deems necessary and is aware that it may hereafter discover facts in addition to, contrary to, or different from those it now knows or believes to be true with respect to the matters set forth herein. Nevertheless, it is the intention of each Party to fully, finally, and forever settle and release all claims of any kind or nature whatsoever that were in existence as of the Effective Date. In furtherance of the Parties' intent, the releases in this Agreement shall remain in full and complete effect notwithstanding the discovery or existence of any additional, contrary, or different facts, including but not limited to any information or documents provided to Plaintiffs pursuant to Sections 3.3 and 4.3 of this Agreement.

9.4    **Covenant Not to Sue.** Plaintiffs covenant not to file, or cause to be filed, any new administrative, state court, or federal court action against Defendants arising from

11

the matters released by this Agreement. This covenant does not restrict Plaintiffs from (a) enforcing this Agreement, (b) responding to lawful subpoenas or compulsory legal process, (c) cooperating with any government investigation, or (d) providing truthful testimony in any proceeding.

9.5 **No Release of Obligations in this Agreement.** The releases set forth above shall not release the Defendant Released Parties or Plaintiff Released Parties from any obligation to be undertaken under this Agreement.

## 10.   DISMISSAL AND RETENTION OF JURISDICTION

10.1 Within five (5) business days after receipt of all payments due under Section 8, the Parties shall execute and file a Joint Stipulation of Dismissal of the Action with Prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and a Proposed Order, in the form attached hereto as Exhibit B. The Joint Stipulation of Dismissal shall state that the Court (Hon. Laurel Beeler, United States Magistrate Judge) shall retain jurisdiction to enforce the settlement for a period of three school years from the Effective Date. The Parties further agree to execute any consents or other documents as may be necessary to proceed before Judge Beeler.

## 11.   REPRESENTATIONS AND WARRANTIES

11.1 **Mutual Representations and Warranties.** Each Party represents and warrants that: (a) it is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization; (b) it has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (c) this Agreement constitutes the legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, subject to any applicable defenses; (d) it has not assigned or transferred, and shall not assign or transfer, any claim, cause of action, obligation, liability, or right released herein; and (e) its execution of and performance under this Agreement does not violate and will not result in any breach of or default under any other contract or legal instrument.

11.2 **No Other Representations or Warranties.** Each Party acknowledges that it is not relying on any representation or warranty not expressly set forth in this Agreement. As set forth in Section 12.1 below, this Agreement constitutes the sole and entire agreement between the Parties with respect to its subject matter, and there are no other agreements or understandings relating thereto.

## 12.   MISCELLANEOUS

12.1 **Entire Agreement; Integration.** This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, and negotiations, whether oral or written, relating to such subject matter.

12.2 **Amendments; Waivers.** No amendment or waiver of any provision of this Agreement shall be effective unless in writing and signed by authorized

representatives of each Party, and any waiver shall be effective only in the specific instance and for the specific purpose for which given.

12.3    **Board Approval.** This Agreement is conditioned upon and subject to formal approval by the Board.

12.4    **Approval of Minor's Compromise.** As two Plaintiffs party to this Agreement are minors, the Agreement is conditioned upon and subject to approval of a Minor's Compromise by the Court.

12.5    **Advice of Counsel.** Each Party acknowledges that it has reviewed and understands this Agreement in its entirety and has had an opportunity to discuss the terms and legal effect of this Agreement and the releases set forth herein with its counsel. Each Party acknowledges that the terms of this Agreement were jointly negotiated by the Parties and agrees that any rule of law, including, but not limited to, California Civil Code § 1654, and any legal decisions that would require interpretation of any claimed ambiguities in this Agreement against the drafting Party shall have no application. Each Party represents and warrants that it enters into this Agreement voluntarily, and without any fraud, duress, coercion, or overreaching.

12.6    **Attorneys' Fees and Costs.** The prevailing Party in any action brought in a court of competent jurisdiction to enforce this Agreement shall be entitled to recover its reasonable attorneys' fees and costs, including any fees and costs incurred on appeal. No Party shall be entitled to recover its attorneys' fees and costs for disputes resolved by the Neutral pursuant to Section 6.5.  Recovery of all such fees and costs are waived.

12.7    **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict-of-laws rules.

12.8    **Construction.** The section headings of this Agreement are for reference only, do not constitute a part of this Agreement, and shall not affect the meaning or interpretation of this Agreement.

12.9    **Notices and Assent.** All notices under this Agreement shall be in writing and delivered by hand or by nationally recognized overnight courier, with a copy by email (with confirmation of transmission) to the addresses below, or to such other address as a Party may designate in writing.

Plaintiffs:
Sam Kasle
923 Emerald Hill Road
Redwood City, California 94061
samkasle@gmail.com

13

With a copy to:
Ropes & Gray LLP
10250 Constellation Boulevard, 21st Floor
Los Angeles, California 90067
Attn: Ryan H. Weinstein
ryan.weinstein@ropesgray.com

and

The Deborah Project
P.O. Box 212
Merion Station, PA 19066
Attn: Lori Lowenthal Marcus
lorilowenthalmarcus@deborahproject.org

The written assent of any of the individuals listed above shall be sufficient to satisfy any requirement in this Agreement for the agreement of Plaintiffs or their authorized representative.

<u>Defendants:</u>

Crystal Leach, Superintendent
Sequoia Union High School District
480 James Ave.
Redwood City, CA 94062
cleach@seq.org

With a copy to:
Dannis Woliver Kelley
200 California Street, Suite 400
San Francisco, California 94111
Attn: William B. Tunick
wtunick@dwkesq.com

The written assent of any of the individuals listed above shall be sufficient to satisfy any requirement in this Agreement for the agreement of Defendants or their authorized representative.

12.10 **Severability.** If any provision of this Agreement is held invalid or unenforceable, such provision shall be enforced to the maximum extent permissible and the remaining provisions shall continue in full force and effect.

12.11 **Counterparts; Electronic Signatures.** This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. Signatures delivered by electronic means shall have the same effect as originals.

12.12    **<u>No Third-Party Beneficiaries.</u>** This Agreement is for the sole benefit of the Parties and their successors and permitted assigns and is not intended to confer any rights upon any third party.

12.13    **<u>Successors and Assigns.</u>** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Neither Party may assign this Agreement without the prior written consent of the other Party.

*Remainder of page intentionally left blank – Signatures on the following page*

IN WITNESS WHEREOF, the Parties, intending to be legally bound, have executed this Agreement as of the Effective Date.


**Plaintiffs**


Concerned Jewish Parents of Sequoia Union High School District

By:

Name: Jennifer Reif

Title: Duly Authorized Representative

Sam Kasle

Andrea Kasle

Leila Kasle

Igor Bershteyn, as Guardian Ad Litem for S.B.

Marina Bershteyn, as Guardian Ad Litem for S.B.

Margarette Kesselman, as Guardian Ad Litem for W.K.

Adam Lyle

Scott Lyle

16



Lori Lyle

Olivia Reif

Dina Berg

Omer Beck

Approved as to form:

ROPES & GRAY LLP

By: _____

Ryan H. Weinstein

THE DEBORAH PROJECT

By: _____

Lori Lowenthal Marcus

Attorneys for Plaintiffs

17

**Defendants**

SEQUOIA UNION HIGH SCHOOL DISTRICT

By: _Crystal Leach (May 20, 2026 15:42:00 PDT)_

Name: Crystal Leach

Title: Superintendent

_Shawneece Stevenson (May 20, 2026 17:18:35 PDT)_

Shawneece Stevenson

_Sathvik Nori (May 21, 2026 07:29:25 GMT+7)_

Sathvik Nori

_Amy Koo (May 21, 2026 15:15:51 PDT)_

Amy Koo

_Richard Ginn (May 21, 2026 15:32:22 PDT)_

Richard Ginn

_Carrie Du Bois (May 21, 2026 15:40:01 PDT)_

Carrie Du Bois

_Todd Beal (May 21, 2026 16:30:46 PDT)_

Todd Beal

_Bonnie Hansen (May 21, 2026 17:03:59 PDT)_

Bonnie Hansen

_Crystal Leach (May 20, 2026 15:42:00 PDT)_

Crystal Leach

_Karl Losekoot (May 21, 2026 17:06:44 PDT)_

Karl Losekoot

18

_____

Gregory S. Gruszynski


_____

Wendy Porter


_____

Charles Velschow


_____

Karen Van Putten


_____

Mary Beth Thompson


_____

Maria E. Cruz


_____

Abdulhadi Kaddoura


Approved as to form:

DANNIS WOLIVER KELLEY


By: _____

William B. Tunick

Attorneys for Defendants


19

Gregory S. Gruszynski

_____
Wendy Porter (May 21, 2026 08:28:18 PDT)

Wendy Porter

_____
Charles Velschow (May 21, 2026 09:13:39 PDT)

Charles Velschow

_____

Karen Van Putten

_____
Mary Beth Thompson (May 21, 2026 12:20:49 PDT)

Mary Beth Thompson

_____
Maria Cruz (May 21, 2026 13:19:17 PDT)

Maria E. Cruz

_____
Abdulhadi Kaddoura (May 21, 2026 14:17:33 PDT)

Abdulhadi Kaddoura


Approved as to form:

DANNIS WOLIVER KELLEY



By:_____

William B. Tunick

Attorneys for Defendants

19

## Exhibit A

## Exhibit 0410: Antisemitism Policy Statement and Definition

In adopting Assembly Bill No. 715 (2025), the California Legislature found that: it has been well documented that Jewish and Israeli American pupils across California are facing a widespread surge in antisemitic discrimination, harassment, and bullying; in many cases, such discrimination, harassment, and bullying has been so severe and pervasive that it has placed Jewish pupils at risk and limited, or completely impeded, their ability to learn or engage in school programs or activities; in certain communities, the discrimination, harassment, and bullying of Jewish pupils has become so severe and pervasive that Jewish pupils have been advised to hide any outward identifying signs of their Jewish identity.

In addition, federal law prohibits discrimination, including harassment, based on individuals' actual or perceived: (1) shared ancestry or ethnic characteristics; or (2) their citizenship or residency in a country with a dominant religion or distinct religious identity.

The Sequoia Union High School District has a legitimate pedagogical interest in reducing antisemitism in our schools and ensuring that no pupil faces an antisemitic school environment.

An antisemitic school environment means a school environment that subjects pupils or employees who are, or are perceived to be, Jewish or Israeli, to harassment, discrimination, or violence based on their religion, nationality, shared ancestry, race, or ethnicity.

The California Legislature has recognized that antisemitic discrimination, harassment, and bullying of Jewish pupils includes: antisemitic tropes and conspiracy theories; discriminatory slurs, symbols, and expressions; physical and verbal assaults; discrimination by proxy and through the use of coded language; collective blame and generalizations about Jewish people; vilification of Jews and Israelis; distortions or mistruths about the Jewish religion, ancestry, history, and identity; the use of inappropriate instructional materials and instruction. Determining whether instruction or school-sponsored activities demonstrate a discriminatory bias does not require a showing of direct harm to members of a protected group, and members of a protected group need not be present while the discriminatory bias is occurring for the act to be considered discriminatory bias.

The U.S. Department of Education, Office for Civil Rights has also acknowledged that in applying the protections of federal law it should consider non-legally binding examples of antisemitism which may include, when taking into account the overall context, the denial of the Jewish people's right to self-defense or self-determination, e.g., by claiming that the State of Israel is a racist endeavor, and/or applying double standards by requiring of the State of Israel a behavior not expected or demanded of any other democratic nation.

Our classrooms must be safe, welcoming, and inclusive learning environments for pupils of all faiths and backgrounds, including Jewish and Israeli pupils. Antisemitism is dangerous, antithetical to our values, and must not be tolerated in any of our classrooms, regardless of whether Jewish pupils are present in that classroom.

[End of Exhibit A]

**Exhibit B — Form of Stipulation of Dismissal**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCERNED JEWISH PARENTS OF SEQUOIA UNION HIGH SCHOOL DISTRICT; LEILA KASLE; S.B., a minor, by and through her Guardians ad Litem, Igor and Marina Bershteyn; W.K., a minor, by and through his Guardian ad Litem, Margarette Kesselman; ADAM LYLE; OLIVIA REIF; DINA BERG; OMER BECK;<br><br>Plaintiffs,<br><br>v.<br><br>SEQUOIA UNION HIGH SCHOOL DISTRICT, KAREN VAN PUTTEN, CHARLES VELSCHOW, WENDY PORTER, GREGORY S. GRUSZYNSKI, ABDULHADI "HADI" KADDOURA, KARL LOSEKOOT, CRYSTAL LEACH, BONNIE HANSEN, TODD BEAL, RICHARD GINN, AMY KOO, each in their official and personal capacities; MARY BETH THOMPSON, and MARIA E. CRUZ, in their official capacities; and CARRIE DU BOIS, and SHAWNEECE STEVENSON, in their personal capacities,<br><br>Defendants. | Case No. 3:24-cv-08015-MMC<br><br>**STIPULATION AND [PROPOSED] ORDER OF DISMISSAL; EXHIBIT** |

IT IS HEREBY STIPULATED by and between Plaintiffs CONCERNED JEWISH PARENTS OF SEQUOIA UNION HIGH SCHOOL DISTRICT, Leila Kasle, S.B., a minor, by and through her Guardians ad Litem, Igor and Marina Bershteyn, W.K., a minor, by and through his Guardian ad Litem, Margarette Kesselman, Adam Lyle, Olivia Reif, Dina Berg, and Omer Beck, and Defendants Sequoia Union High School District, Karen Van Putten, Charles Velschow, Wendy Porter, Gregory S. Gruszynski, Abdulhadi "Hadi" Kaddoura, Karl Losekoot, Crystal Leach, Bonnie Hansen, Todd Beal, Richard Ginn, Amy Koo, Mary Beth Thompson, Maria E. Cruz, Carrie Du Bois, and Shawneece Stevenson (collectively, the "Parties"), by and through their respective counsel, that the above-

21

captioned action be and hereby is dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

IT IS FURTHER STIPULATED THAT, pursuant to the terms of the Settlement Agreement between the Parties, attached as Exhibit 1, the Court (Hon. Laurel Beeler, United States Magistrate Judge) shall retain jurisdiction to enforce the terms of the Settlement Agreement for a period of three full school years from the Effective Date;

IT IS FURTHER STIPULATED THAT, except as otherwise provided in the Settlement Agreement, each Party shall bear its own attorneys' fees, costs, and litigation expenses.

[Signature Blocks]

[End of Exhibit B]

**<u>Exhibit C—Revisions to District Policy Documents</u>**

## Board Policy 0410: Nondiscrimination In District Programs And Activities

The Board of Trustees is committed to providing equal opportunity for all individuals in district programs and activities. District programs, activities, and practices shall be free from unlawful discrimination, including discrimination against an individual or group based on race, color, ancestry, nationality, national origin, immigration status, ethnic group identification, ethnicity, age, religion, marital status, pregnancy, parental status, physical or mental disability, sex, sexual orientation, gender, gender identity, gender expression, or genetic information; a perception of one or more of such characteristics; or association with a person or group with one or more of these actual or perceived characteristics. This includes unlawful discrimination based on actual or perceived shared ancestry or ethnic characteristics, such as students of Jewish, Israeli, Palestinian, Muslim, Arab, and/or South Asian descent or based on a student's actual or perceived citizenship or residency in a country with a dominant religion or distinct religious identity.

All individuals shall be treated equitably in the receipt of district and school services. Personally identifiable information collected in the implementation of any district program, including, but not limited to, student and family information for the free and reduced-price lunch program, transportation, or any other educational program, shall be used only for the purposes of the program, except when the Superintendent or designee authorizes its use for another purpose in accordance with law. Resources and data collected by the district shall not be used, directly or by others, to compile a list, registry, or database of individuals based on race, gender, sexual orientation, religion, ethnicity, national origin, or immigration status or any other category identified above.

District programs and activities shall be free of any racially derogatory or discriminatory school or athletic team names, mascots, or nicknames.

The Superintendent or designee shall annually review district programs and activities to ensure the removal of any derogatory or discriminatory name, image, practice, or other barrier that may unlawfully prevent an individual or group in any of the protected categories stated above from accessing district programs and activities. He/she shall take prompt, reasonable actions to remove any identified barrier. The Superintendent or designee shall report his/her findings and recommendations to the Board after each review.

All allegations of unlawful discrimination in district programs and activities shall be investigated and resolved in accordance with the procedures specified in AR 1312.3 - Uniform Complaint Procedures.

District efforts in addressing identification of, response to, prevention of, and countering antisemitism shall be consistent with the requirements and guidance found in Education Code section 33803.1 and Exhibit 0410: Antisemitism Policy Statement and Definition.

Pursuant to 34 CFR 104.8 and 34 CFR 106.9, the Superintendent or designee shall notify students, parents/guardians, employees, employee organizations, applicants for admission

24

and employment, and sources of referral for applicants about the district's policy on nondiscrimination and related complaint procedures. Such notification shall be included in the annual parental notification distributed pursuant to Education Code 48980 and, as applicable, in announcements, bulletins, catalogs, handbooks, application forms, or other materials distributed by the district. The notification shall also be posted on the district's web site and social media and in district schools and offices, including staff lounges, student government meeting rooms, and other prominent locations as appropriate.

In addition, the annual parental notification shall inform parents/guardians of their children's right to a free public education regardless of immigration status or religious beliefs, including information on educational rights issued by the California Attorney General. Alternatively, such information may be provided through any other cost-effective means determined by the Superintendent or designee. (Education Code 234.7)

The district's nondiscrimination policy and related informational materials shall be published in a format that parents/guardians can understand. In addition, when 15 percent or more of a school's students speak a single primary language other than English, those materials shall be translated into that other language.

**Access for Individuals with Disabilities**

District programs and facilities, viewed in their entirety, shall be in compliance with the Americans with Disabilities Act (ADA) and any implementing standards and/or regulations. When structural changes to existing district facilities are needed to provide individuals with disabilities access to programs, services, activities, or facilities, the Superintendent or designee shall develop a transition plan that sets forth the steps for completing the changes.

The Superintendent or designee shall ensure that the district provides appropriate auxiliary aids and services when necessary to afford individuals with disabilities equal opportunity to participate in or enjoy the benefits of a service, program, or activity. These aids and services may include, but are not limited to, qualified interpreters or readers, assistive listening devices, assistive technologies or other modifications to increase accessibility to district and school web sites, notetakers, written materials, taped text, and Braille or large-print materials. Individuals with disabilities shall notify the Superintendent or principal if they have a disability that requires special assistance or services. Reasonable notification should be given prior to a school-sponsored function, program, or meeting.

The individual identified in AR 1312.3 - Uniform Complaint Procedures as the employee responsible for coordinating the district's response to complaints and for complying with state federal civil rights laws is hereby designated as the district's ADA coordinator. He/she shall receive and address requests for accommodation submitted by individuals with disabilities, and shall investigate and resolve complaints regarding their access to district programs, services, activities, or facilities.

25

Jacqueline McEvoy

480 James Avenue

Redwood City, CA 94062

650-369-1411

jmcevoy@seq.org

**<u>Board Policy 0415: Equity</u>**

The Board of Trustees believes that the diversity that exists among the district's community of students, staff, parents/guardians, and community members is integral to the district's vision, mission, and goals. Addressing the needs of the most marginalized learners requires recognition of the inherent value of diversity and acknowledgement that educational excellence requires a commitment to equity in the opportunities provided to students and the resulting outcomes.

In order to eradicate institutional bias of any kind, including implicit or unintentional biases and prejudices that affect student achievement, and to eliminate disparities in educational outcomes for students from historically underserved and underrepresented populations, the district shall proactively identify class and cultural biases as well as practices, policies, and institutional barriers that negatively influence student learning, perpetuate achievement gaps, and impede equal access to opportunities for all students. This includes forms of bigotry, including but not limited to racism, sexism, heterosexism, classism, ableism, ageism, antisemitism, Islamophobia, transphobia, homophobia, biphobia, and xenophobia.

District efforts in addressing identification of, response to, prevention of, and countering antisemitism shall be consistent with the requirements and guidance found in Education Code section 33803.1 and Exhibit 0410: Antisemitism Policy Statement and Definition.

The Board shall make decisions with a deliberate awareness of impediments to learning faced by students of color and/or diverse cultural, linguistic, or socio-economic backgrounds. To ensure that equity is the intentional result of district decisions, the Board shall consider whether its decisions address the needs of students from racial, ethnic, and indigent communities and remedy the inequities that such communities experienced in the context of a history of exclusion, discrimination, and segregation. Board decisions shall not rely on biased or stereotypical assumptions about any particular group of students.

The Board and the Superintendent or designee shall develop and implement policies and strategies to promote equity in district programs and activities, through measures such as the following:

1.  Routinely assessing student needs based on data disaggregated by race, ethnicity, and socio-economic and cultural backgrounds in order to enable equity-focused policy, planning, and resource development decisions

2.  Analyzing expenditures and allocating financial and human resources in a manner that provides all students with equitable access to district programs, support services, and opportunities for success and promotes equity and inclusion in the district. Such resources include access to high-quality administrators, teachers,

27

and other school personnel; funding; technology, equipment, textbooks, and other instructional materials; facilities; and community resources or partnerships.

3.  Enabling and encouraging students to enroll in, participate in, and complete curricular and extracurricular courses, advanced college preparation programs, and other student activities

4.  Building a positive school climate that promotes student engagement, safety, and academic and other supports for students

5.  Adopting curriculum and instructional materials that accurately reflect the diversity among student groups

6.  Providing and/or collaborating with local agencies and community groups to ensure the availability of necessary support services for students in need

7.  Promoting the employment and retention of a diverse staff that reflects the student demographics of the community

8.  Providing district staff with ongoing, researched-based, professional learning and professional development on culturally responsive instructional practices

9.  Conducting program evaluations that focus on equity and address the academic outcomes and performance of all students on all indicators

The Board shall regularly monitor the intent and impact of district policies and decisions in order to safeguard against disproportionate or unintentional impact on access to district programs and achievement goals for specific student populations in need of services.

28

## Board Policy 4119.21: Professional Standards

The Board of Trustees expects district employees to maintain the highest ethical standards, behave professionally, abide by state and federal laws, and exercise good judgment when interacting with students and other members of the school community. Employees shall engage in conduct that enhances the integrity of the district, advances the goals of the district's educational programs, and contributes to a positive school climate.

The Board also expects district employees to follow district policies and regulations, including but not limited to, Board Policy 0410: Nondiscrimination In District Programs And Activities, Exhibit 0410: Antisemitism Policy Statement and Definition; Board Policy 5145.3: Nondiscrimination/Harassment; Board Policy 5145.9: Hate-Motivated Behavior; and Board Policy 6144: Controversial Issues.

Each employee is expected to acquire the knowledge and skills necessary to fulfill his/her responsibilities and to contribute to the learning and achievement of district students.

Failure to comply with this policy may be grounds for discipline, up to and including termination.

### Inappropriate Conduct

Inappropriate employee conduct includes, but is not limited to:

1. Engaging in any conduct that endangers students, staff, or others, including, but not limited to, physical violence, threats of violence, or possession of a firearm or other weapon

2. Engaging in harassing or discriminatory behavior towards students, parents/guardians, staff, or community members, or failing or refusing to intervene when an act of discrimination, harassment, intimidation, or bullying against a student is observed

3. Physically abusing, sexually abusing, neglecting, or otherwise willfully harming or injuring a child

4. Engaging in inappropriate socialization or fraternization with a student or soliciting, encouraging, or maintaining an inappropriate written, verbal, or physical relationship with a student

5. Possessing or viewing any pornography on school grounds, or possessing or viewing child pornography or other imagery portraying children in a sexualized manner at any time

6.  Using profane, obscene, or abusive language against students, parents/guardians, staff, or community members

7.  Willfully disrupting district or school operations by loud or unreasonable noise or other action

8.  Using tobacco, alcohol, or an illegal or unauthorized substance, or possessing or distributing any controlled substance, while in the workplace, on district property, or at a school-sponsored activity

9.  Being dishonest with students, parents/guardians, staff, or members of the public, including, but not limited to, falsifying information in employment records or other school records

10. Divulging confidential information about students, district employees, or district operations to persons or entities not authorized to receive the information

11. Using district equipment or other district resources for the employee's own commercial purposes or for political activities

12. Using district equipment or communications devices for personal purposes while on duty, except in an emergency, during scheduled work breaks, or for personal necessity

13. Employees shall be notified that computer files and all electronic communications, including, but not limited to, email and voice mail, are not private. To ensure proper use, the Superintendent or designee may monitor employee usage of district technological resources at any time without the employee's consent.

14. Causing damage to or engaging in theft of property belonging to students, staff, or the district

15. Wearing inappropriate attire

**Reports of Misconduct**

An employee who observes or has evidence of another employee's inappropriate conduct shall immediately report such conduct to the principal or Superintendent or designee. An employee who has knowledge of or suspects child abuse or neglect shall file a report pursuant to the district's child abuse reporting procedures as detailed in AR 5141.4 - Child Abuse Prevention and Reporting.

Any reports of employee misconduct shall be promptly investigated. Any employee who is found to have engaged in inappropriate conduct in violation of law or Board policy shall be subject to disciplinary action and, in the case of a certificated employee, may be

30

subject to a report to the Commission on Teacher Credentialing. The Superintendent or designee shall notify local law enforcement as appropriate.

An employee who has knowledge of but fails to report inappropriate employee conduct may also be subject to discipline.

The district prohibits retaliation against anyone who files a complaint against an employee or reports an employee's inappropriate conduct. Any employee who retaliates against any such complainant, reporter, or other participant in the district's complaint process shall be subject to discipline.

**Notifications**

The section(s) of the district's employee code of conduct addressing interactions with students shall be provided to parents/guardians at the beginning of each school year and shall be posted on school and/or district web sites. (Education Code 44050)

### Board Policy 5131: Conduct

The Board of Trustees believes that all students have the right to be educated in a safe and positive learning environment free from disruptions.  Students shall be expected to exhibit appropriate conduct that does not infringe upon the rights of others or interfere with the school program while on school grounds, going to or coming from school, at school activities, or using district transportation.

The Superintendent or designee shall ensure that each school develops standards of conduct and discipline consistent with Board policies and administrative regulations. Students and parents/guardians shall be notified of district and school rules related to conduct.

Prohibited student conduct includes, but is not limited to:

1. Conduct that endangers students, staff, or others, including, but not limited to, physical violence, possession of a firearm or other weapon, and terrorist threats

2. Discrimination, harassment, intimidation, or bullying of students or staff, including but not limited to sexual harassment, hate-motivated behavior, antisemitic conduct, cyberbullying, hazing or initiation activity, extortion, or any other verbal, written, or physical conduct. This includes conduct that is prohibited by Board Policy 0410: Nondiscrimination In District Programs And Activities; Exhibit 0410: Antisemitism Policy Statement and Definition; Board Policy 5145.3: Nondiscrimination/Harassment, and Board Policy 5145.9: Hate-Motivated Behavior

3. Conduct that disrupts the orderly classroom or school environment

4. Willful defiance of staff's authority

5. Damage to or theft of property belonging to students, staff, or the district

6. Obscene acts or use of profane, vulgar, or abusive language

7. Possession, use, or being under the influence of tobacco, alcohol, or other prohibited substances

8. Possession or use of a laser pointer, unless for a valid instructional or other school-related purpose with prior permission of the principal or designee  (Penal Code 417.27)

9. Use of a smartphone or other mobile communication device in an unauthorized manner

10. Plagiarism or dishonesty on school work or tests

11. Wearing of any attire that violates district or school dress codes, including gang-related apparel

12. Tardiness or unexcused absence from school

13. Failure to remain on school premises in accordance with school rules

14. Other conduct prohibited by Education Code 48900-48915

Employees are expected to enforce standards of conduct and, when they observe or receive a report of a violation of these standards, to appropriately intervene or seek assistance. As necessary, the employee shall refer the matter to a supervisor or the principal or designee.

When a school employee suspects that a search of a student or a student's belongings will turn up evidence of the student's violation of the law or school rules, such a search shall be conducted in accordance with Board Policy and Administrative Regulation 5145.12 - Search and Seizure.

When a student uses any prohibited device, or uses a permitted device in an unauthorized manner, a district employee may confiscate the device.  The employee shall store the device securely until it is returned to the student or turned over to the principal or designee, as appropriate.

Students who violate district or school rules and regulations may be subject to discipline including, but not limited to, suspension, expulsion, transfer to alternative programs, referral to a student success team or counseling services, or denial of participation in extracurricular or cocurricular activities or other privileges in accordance with Board policy and administrative regulation.  The Superintendent or designee shall notify local law enforcement as appropriate.

Students also may be subject to discipline, in accordance with law, Board policy, or administrative regulation, for any off-campus conduct during nonschool hours which poses a threat or danger to the safety of students, staff, or district property, or substantially disrupts school activities.

## Board Policy 5131.5: Vandalism And Graffiti

The Board of Trustees desires to enhance student learning by striving to provide an environment where students and staff can feel safe and secure and can take pride in their school. To that end, the Superintendent or designee shall develop strategies for preventing graffiti and vandalism on school grounds, including collaborating with local law enforcement and city and county officials, as appropriate, to help develop a coordinated response to graffiti and vandalism in the community.

Students and staff are encouraged to report any graffiti or vandalism to the principal or designee for investigation. The principal or designee shall determine whether the incident necessitates an investigation pursuant to the district's sexual harassment, hate-motivated behavior, or nondiscrimination grievance procedure.  This determination shall include consideration of Exhibit 0410: Antisemitism Policy Statement and Definition.

As appropriate, the principal or designee may contact local law enforcement in instances when the graffiti is repetitive, identifies particular targets or groups, identifies the perpetrator, and/or contains incitements to violence, threats, or intimidation. Photographs or other evidence of the vandalism or graffiti shall be preserved as necessary for investigation by the district or law enforcement and as evidence in any district disciplinary proceedings.

The principal or designee shall ensure that graffiti on school grounds is removed and covered as soon as possible, and if practicable before the beginning of the school day.

A student who commits an act of vandalism or graffiti on school grounds shall be subject to disciplinary action, including, but not limited to, suspension or expulsion in accordance with Board policy and administrative regulation. If reparation for damages is not made, the district also may withhold the student's grades, diploma, and/or transcripts in accordance with law.

**<u>Board Policy 5137: Positive School Climate</u>**

The Board of Trustees desires to enhance student learning by providing an orderly, caring, and nurturing educational and social environment in which all students can feel safe and take pride in their school and their achievements. The school environment should be characterized by positive interpersonal relationships among students and between students and staff.

All staff are expected to serve as role models for students by demonstrating positive, professional attitudes and respect toward each student and other staff members. Teachers shall use effective classroom management techniques based on clear expectations for student behavior.

Staff shall consistently enforce Board policies and regulations which establish rules for appropriate student and faculty conduct, including prohibitions against bullying, cyberbullying, harassment of students, hazing, other violence or threats of violence against students and staff, and drug, alcohol, and tobacco use. This includes the rules established by Board Policy 0410: Nondiscrimination In District Programs And Activities; Exhibit 0410: Antisemitism Policy Statement and Definition; Board Policy 5145.3: Nondiscrimination/Harassment; Board Policy 5145.9: Hate-Motivated Behavior; and Board Policy 6144: Controversial Issues.

The district's curriculum shall include age-appropriate character education which includes, but is not limited to, the principles of equality, human dignity, mutual respect, fairness, honesty, and citizenship. Teachers are encouraged to employ cooperative learning strategies that foster positive interactions in the classroom among students from diverse backgrounds.

The Superintendent or designee may develop other strategies to enhance students' feelings of connectedness with the schools, such as campus beautification projects, graffiti removal, development of extracurricular activities and after-school programs, pairing of adult mentors with individual students, recognition of student achievement, and encouragement of strong family and community involvement in the schools.

Students shall have opportunities to voice their concerns about school policies and practices and to share responsibility for solving problems that affect their school.

The schools shall promote nonviolent conflict resolution techniques in order to encourage attitudes and behaviors that foster harmonious relations. As part of this effort, students shall be taught the skills necessary to reduce violence, including communication skills, anger management, bias reduction, and mediation skills.

Staff shall receive professional development designed to improve classroom management, conflict resolution techniques, and communications with students and parents/guardians including persons of diverse backgrounds.

## Board Policy 5145.3: Nondiscrimination/Harassment

The Board desires to provide a welcoming, safe, and supportive school environment that allows all students equal access to and opportunities in the district's academic, extracurricular, and other educational support programs, services, and activities. The Board prohibits, at any district school or school activity, unlawful discrimination, including discriminatory harassment, intimidation, and bullying, targeted at any student by anyone, based on the student's actual or perceived race, color, ancestry, nationality, national origin, immigration status, ethnic group identification, ethnicity, age, religion, marital status, pregnancy, parental status, physical or mental disability, medical condition, sex, sexual orientation, gender, gender identity, gender expression, or genetic information, or association with a person or group with one or more of these actual or perceived characteristics.

This includes discrimination targeted at a student based on actual or perceived shared ancestry or ethnic characteristics, such as students of Jewish, Israeli, Palestinian, Muslim, Arab, and/or South Asian descent.

Antisemitism is prohibited as a form of discrimination. District efforts in addressing identification of, response to, prevention of, and countering antisemitism shall be consistent with the requirements and guidance found in Education Code section 33803.1 and Exhibit 0410: Antisemitism Policy Statement and Definition.

This policy shall apply to all acts constituting unlawful discrimination or harassment related to district activity or attendance, to acts which occur off campus or outside of district-related or district-sponsored activities but which may have an impact or create a hostile environment at school, and to all acts of the Board and the Superintendent in enacting policies and procedures that govern the district.

The Board prohibits, at any district school or activity, unlawful discrimination, including discriminatory harassment, intimidation, and bullying, against an individual or group based on one, or a combination of two or more, protected characteristics, which include, but may not be limited to, race or ethnicity; ancestry; color; ethnic group identification; nationality; national origin; immigration status; sex; sexual orientation; sex stereotypes; gender; gender identity; gender expression; religion; disability; medical condition; genetic information; pregnancy, false pregnancy, childbirth, termination of pregnancy, or related conditions or recovery; and parental, marital, and family status; a perception of one or more of such characteristics; or association with a person or group with one or more of these actual or perceived characteristics.  (Education Code 200, 210.1, 210.2,

212, 212.1, 220, 221.51, 230, 260; Government Code 11135, 12926; 20 USC 1681-1688, 42 USC 2000d-2000d-7)

Unlawful discrimination, including discriminatory harassment, intimidation, or bullying, may result from physical, verbal, nonverbal, or written conduct based on any of the categories listed above. Unlawful discrimination also occurs when prohibited conduct is so severe, persistent, or pervasive that it affects a student's ability to participate in or benefit from an educational program or activity; creates an intimidating, threatening, hostile, or offensive educational environment; has the effect of substantially or unreasonably interfering with a student's academic performance; or otherwise adversely affects a student's educational opportunities.

Unlawful discrimination also includes disparate treatment of students based on one of the categories above with respect to the provision of opportunities to participate in school programs or activities or the provision or receipt of educational benefits or services. All allegations of unlawful discrimination in district programs and activities shall be brought, investigated, and resolved in accordance with Board Policy 1312.3 - Uniform Complaint Procedures.

Because unlawful discrimination could occur when disciplining students, including suspension and expulsion, the Superintendent or designee shall ensure that staff enforce discipline rules fairly, consistently and in a non-discriminatory manner, as specified in Board Policy and Administrative Regulation 5144 - Discipline, Board Policy and Administrative Regulation 5144.1 - Suspension and Expulsion/Due Process, and Administrative Regulation 5144.2 - Suspension and Expulsion/Due Process (Students With Disabilities).

The Board also prohibits any form of retaliation against any individual who reports or participates in the reporting of unlawful discrimination, files or participates in the filing of a complaint, or investigates, or participates in the investigation of a complaint or report alleging unlawful discrimination. Retaliation complaints shall be investigated and resolved in the same manner as a discrimination complaint.

The Superintendent or designee shall facilitate students' access to the educational program by publicizing the district's nondiscrimination policy and related complaint procedures to students, parents/guardians, and employees. In addition, the Superintendent or designee shall post the district's policies prohibiting discrimination, harassment, intimidation, and bullying and other required information on the district's website in a manner that is easily accessible to parents/guardians and students, in accordance with law and the accompanying administrative regulation. (Education Code 234.1, 234.6)

The Superintendent or designee shall provide training and/or information on the scope and use of the policy and complaint procedures and take other measures designed to increase the understanding of the requirements of law related to discrimination. The Superintendent or designee shall regularly review the implementation of the district's nondiscrimination policies and practices and, as necessary, shall take action to remove any identified barrier to student access to or participation in the district's educational program. The Superintendent or designee shall report the findings and recommendations to the Board after each review.

Regardless of whether a complainant complies with the writing, timeline, and/or other formal filing requirements, all complaints alleging unlawful discrimination, including discriminatory harassment, intimidation, or bullying, shall be investigated and prompt action taken to stop the discrimination, prevent recurrence, and address any continuing effect on students.

Students who engage in unlawful discrimination, including discriminatory harassment, intimidation, retaliation, or bullying, in violation of law, Board policy, or administrative regulation shall be subject to appropriate consequence or discipline, which may include suspension or expulsion when the behavior is severe or pervasive as defined in Education Code 48900.4. Any employee who permits or engages in prohibited discrimination related to a district activity, attendance, or district-related or district-sponsored activity, including discriminatory harassment, intimidation, retaliation, or bullying, shall be subject to disciplinary action, up to and including dismissal.

When a student has been suspended, or other means of correction have been implemented against the student for an incident of racist bullying, harassment, or intimidation, the principal or designee may engage both the victim and perpetrator in a restorative justice practice suitable to the needs of the students. The principal or designee may also require the perpetrator to engage in a culturally sensitive program that promotes racial justice and equity and combats racism and ignorance and regularly check on the victim to ensure that the victim is not in danger of suffering from any long-lasting mental health issues. (Education Code 48900.5)

When appropriate based on the severity or pervasiveness of the bullying, the Superintendent or designee shall notify the parents/guardians of victims and perpetrators and may contact law enforcement.

Complaints alleging unlawful discrimination in district programs and activities shall be investigated and resolved in accordance with Board Policy 1312.3 - Uniform Complaint

38

Procedures, when required by law. Formal Title IX complaints alleging sexual harassment under Title IX shall be investigated and resolved in accordance with the procedures specified in Administrative Regulation 5145.71 - Title IX Sexual Harassment Complaint Procedures.

Failure to comply with this policy may be grounds for discipline.

**Record-Keeping**

The Superintendent or designee shall maintain a record of all reported cases of unlawful discrimination, including discriminatory harassment, intimidation, or bullying, to enable the district to monitor, address, and prevent repetitive prohibited behavior in district schools.

39

## Board Policy 5145.9: Hate-Motivated Behavior

The Board of Trustees is committed to providing a respectful, inclusive, safe learning environment that protects students from discrimination, harassment, intimidation, bullying, or any other type of behavior that is motivated by hate.

Hate-motivated behavior is any behavior intended to cause emotional suffering, physical injury, or property damage through intimidation, harassment, bigoted slurs or epithets, force or threat of force, or vandalism motivated in part or in whole by bias or hostility toward the victim's real or perceived race, color, ancestry, nationality, national origin, immigration status, ethnic group identification, ethnicity, age, religion, marital status, pregnancy, parental status, physical or mental disability, medical condition, sex, sexual orientation, gender, gender identity, gender expression, or genetic information, or any other characteristic identified in Education Code 200 or 220, Government Code 11135, or Penal Code 422.55. Antisemitism, when motivated by bias or hostility as described in this policy, constitutes hate-motivated behavior prohibited under this policy.

The Superintendent or designee shall design strategies to promote harmonious relationships among students, prevent incidents of hate-motivated behavior to the extent possible, and address such incidents in a timely manner when they occur.

The Superintendent or designee shall collaborate with regional programs and community organizations to promote an environment where diversity is celebrated and hate-motivated behavior is not tolerated. Such collaborative efforts shall focus on the development of effective prevention strategies and response plans, provision of assistance to students affected by hate-motivated behavior, and/or education of students who have perpetrated hate-motivated acts.

The district shall provide students with age-appropriate instruction that:

1. Includes the development of social-emotional learning
2. Promotes an understanding, awareness, appreciation and respect for human rights, human relations, diversity, and acceptance in a multicultural society
3. Explains the harm and dangers of explicit and implicit biases
4. Discourages discriminatory attitudes and practices
5. Provides strategies to manage conflicts constructively

As necessary, the district shall provide counseling, guidance, and support to students who are victims of hate-motivated behavior and to students who exhibit such behavior.

When appropriate, students who engage in hate-motivated behavior shall be disciplined.

Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. 2000d et seq., prohibits discrimination on the basis of race, color and national origin in programs and activities receiving Federal financial assistance. While Title VI does not cover discrimination based on religion, individuals who face discrimination on the basis of race, color or national

40

origin do not lose protection under Title VI for also being a member of a group that shares common religious practices.

The Superintendent or designee shall provide staff with training that:

1. Promotes an understanding of diversity, equity, and inclusion
2. Discourages the development of discriminatory attitudes and practices
3. Includes social-emotional learning and nondiscriminatory instructional and counseling methods
4. Supports the prevention, recognition, and response to hate-motivated behavior
5. Raises the awareness and sensitivity of staff to potentially prejudicial and discriminatory behavior
6. Includes effective enforcement of rules for appropriate student conduct

Employees who engage in hate-motivated behavior shall be subject to disciplinary action, up to and including dismissal.

Rules prohibiting hate-motivated behavior and procedures for reporting a hate-motivated incident shall be provided to students, staff, and parents/guardians.

This policy shall be posted in a prominent location on the district's website in a manner that is readily and easily accessible to parents/guardians and students. (Education Code 234.6)

**Complaints**

Any staff member who is notified that hate-motivated behavior has occurred, observes such behavior, or otherwise becomes aware of an incident shall immediately contact the principal or the compliance officer responsible for coordinating the district's response to complaints and complying with state and federal civil rights laws. As appropriate, the staff member shall also contact law enforcement.

A student or parent/guardian who believes the student is a victim of hate-motivated behavior is encouraged to report the incident to a teacher, the principal, the district's compliance officer, or other staff member.

Any complaint of hate-motivated behavior shall be investigated and, if determined to be discriminatory, shall be resolved in accordance with law and the district's uniform complaint procedures specified in AR 1312.3 - Uniform Complaint Procedures or other applicable procedure. If, during the investigation, it is determined that a complaint is about nondiscriminatory behavior, the principal or designee shall inform the complainant and shall take all necessary actions to resolve the complaint.

41

## Board Policy 6144: Controversial Issues

The Board of Trustees believes that students should have opportunities to discuss controversial issues which have political, social, or economic significance and which the students are mature enough to investigate and address. The study of a controversial issue should help students learn how to gather and organize pertinent facts, discriminate between fact and fiction, draw intelligent conclusions, and respect the opinions of others.

The Board expects administrators and teachers to exercise professional judgment when deciding whether or not a particular issue is suitable for study or discussion. They shall consult with the Superintendent or designee as necessary to determine the appropriateness of the subject matter, guest speakers, and/or related instructional materials or resources.  The Superintendent or designee may provide written guidance as to any specific topic which is considered controversial.

The instruction shall not reflect adversely upon persons because of their race, ethnicity, national origin, sex, sexual orientation, gender identity or expression, disability, religion, or any other basis prohibited by law.

The Board also expects teachers to ensure that all sides of a controversial issue are impartially presented, with adequate and appropriate factual information. Without promoting any particular point of view, the teacher should help students separate fact from opinion and warn them against drawing conclusions from insufficient data. The teacher shall not suppress any student's view on the issue as long as its expression is not malicious or abusive toward others.

In the classroom, teachers act on behalf of the district and are expected to follow the adopted curriculum. In leading or guiding class discussions about issues that may be controversial, a teacher may not advocate his/her personal opinion or viewpoint. Teachers shall refrain from sharing personal views in the classroom during instruction on controversial topics.

Students shall be assured of their right to form and express an opinion without jeopardizing their grades or being subject to discrimination, retaliation, or discipline, provided the viewpoint does not constitute harassment, threats, intimidation, or bullying or is otherwise unlawful.

When a guest speaker is invited to make a presentation related to a controversial issue, the Board requires that they be notified of this policy and the expectations and goals regarding the instruction. If the guest speaker is presenting only one point of view on an issue, the teacher shall be responsible for ensuring that students also receive information on opposing viewpoints.

Any supplementary instructional material which addresses a controversial issue shall comply with all Board Policies, including but not limited to Board Policy 6161.11:

42

Supplementary Instructional Materials, and shall be reviewed and approved by the Superintendent or designee before use in the classroom.

When required by law or District guidance, such as in regards to comprehensive sexual health and HIV prevention education, parents/guardians shall be notified prior to instruction that they may request in writing that their child be excused from the instruction. Students whose parents/guardians decline such instruction may be offered an alternative activity of similar educational value.

A student or parent/guardian with concerns regarding instruction about controversial issues may communicate directly with the teacher or principal and/or use appropriate district complaint procedures.

Failure to comply with this policy may be grounds for discipline, up to and including termination.

## Policy Bulletin: The Israel-Palestine Conflict

**ROUTING:** Board of Trustees, Cabinet, Principals, Instructional Vice Principals, Certificated Staff

**TITLE:** Israel-Palestinian Conflict As Controversial Issue.

**NUMBER**: _____

**ISSUER/DEPT**: _____

**DATE**: _____

**PURPOSE**: Guidance On Topic Considered Controversial Issue Under BP 6144

**BACKGROUND:**

Board Policy 6144: Controversial Issues indicates that students should have opportunities to discuss controversial issues which have political, social, or economic significance and which the students are mature enough to investigate and address. The study of a controversial issue should help students learn how to gather and organize pertinent facts, discriminate between fact and fiction, draw intelligent conclusions, and respect the opinions of others.

The Board expects administrators and teachers to exercise professional judgment when deciding whether or not a particular issue is suitable for study or discussion. They shall consult with the Superintendent or designee as necessary to determine the appropriateness of the subject matter, guest speakers, and/or related instructional materials or resources.  The Superintendent or designee may provide written guidance as to any specific topic which is considered controversial.

The instruction shall not reflect adversely upon persons because of their race, ethnicity, national origin, sex, sexual orientation, gender identity or expression, disability, religion, or any other basis prohibited by law.

The Board also expects teachers to ensure that all sides of a controversial issue are impartially presented, with adequate and appropriate factual information. Without promoting any particular point of view, the teacher should help students separate fact from opinion and warn them against drawing conclusions from insufficient data. The teacher shall not suppress any student's view on the issue as long as its expression is not malicious or abusive toward others.

In the classroom, teachers act on behalf of the District and are expected to follow the adopted curriculum. In leading or guiding class discussions about issues that may be controversial, a teacher may not advocate their personal opinion or viewpoint. Teachers shall refrain from sharing personal views in the classroom during instruction on controversial topics.

44

Students shall be assured of their right to form and express an opinion without jeopardizing their grades or being subject to discrimination, retaliation, or discipline, provided the viewpoint does not constitute harassment, threats, intimidation, or bullying or is otherwise unlawful.

When a guest speaker is invited to make a presentation related to a controversial issue, the Board requires that they be notified of this policy and the expectations and goals regarding the instruction. If the guest speaker is presenting only one point of view on an issue, the teacher shall be responsible for ensuring that students also receive information on opposing viewpoints.

Any supplementary instructional material which addresses a controversial topic shall comply with Board Policy 6161.11: Supplementary Instructional Materials and shall be reviewed and approved by the Superintendent or designee before use in the classroom.


**CONTROVERSIAL ISSUE**

Until further notice, the Israel-Palestine Conflict is designated as a "Controversial Issue" pursuant to Board Policies.

Supplementary Instructional Materials pertaining to the Israel-Palestine Conflict must be reviewed and approved before use in the classroom. Supplementary Instructional Materials which require review should be submitted to the school's principal no later than 10 business days prior to classroom use for the District's review.

Additionally, during the next three school years, pursuant to a settlement agreement recently approved by the U.S. District Court in Concerned Jewish Parents of S*equoia Union High School District, et al. v. Sequoia Union High School District, et al*., all Supplementary Instructional Materials addressing or referencing the Israel-Palestine Conflict must also be submitted by the District to an independent reviewer designated under the settlement agreement no less than five (5) business days prior to planned use. Materials may not be used if the independent reviewer determines they do not comply with this Policy Bulletin, Board Policy 6144: Controversial Issues, Board Policy 6161.11: Supplementary Instructional Materials, or Education Code section 51500.

For purposes of this Policy Bulletin, "Supplementary Instructional Materials" means teacher-selected or teacher-created content, including but not limited to handouts, slides, articles, videos, external links, and similar content. It does not include quizzes, tests, or other materials used for student assessment. Supplementary Instructional Materials also does not include materials formally adopted or approved by the District, contained within textbooks or curriculum formally adopted by the District, or included in any designated repository of materials available on the District's website.

For purposes of this Policy Bulletin, the Israel-Palestine Conflict shall be broadly defined to include the historical, political, social, cultural, or religious issues, events, or narratives involving the State of Israel, the Jewish people's historical and ongoing connection to the land of Israel, the Palestinian people, the disputed territories now commonly referred to as the West Bank and Gaza Strip, and any related actors, organizations, or events. This definition encompasses, but is not limited to, the origins, development, and ongoing aspects

45

of the conflict, peace processes, international responses, and the lived experiences of affected populations.

Instruction on this topic must be appropriate for the classroom and curriculum. Teachers shall ensure that all sides of the issue are impartially presented, with adequate and appropriate factual information. In leading or guiding class discussions about the topic, a teacher may not advocate their personal opinion or viewpoint. Teachers shall refrain from sharing personal views in the classroom during instruction on this topic. Teachers are required to present divergent points of view on this topic, like any other Controversial Issue, including perspectives of different national, ethnic, and religious groups in the region, including Israeli, Palestinian, Jewish, Arab, Muslim, and others affected by the conflict, and allow students the opportunity to explore the topic and draw independent conclusions.

Failure to comply with this process may be grounds for discipline.

[End of Exhibit C]

## **<u>Exhibit D — Administrative Regulation 5020.1</u>**

<u>Administrative Regulation 5020.1: Instructional Materials Inspection Process</u>

Parents/guardians requesting to inspect currently existing curriculum materials, including supplemental instructional materials, assessments, textbooks, teacher's manuals, films, audio and video recordings, and software stored by the classroom teacher in the class in which their child is enrolled shall do so pursuant to this regulation.

Requests for inspection shall be made to the teacher in writing with a copy to the principal.

The teacher shall respond to the request within 5 school days by: (1) providing electronic copies of the records or instructions to locate the records through a district-provided electronic service or otherwise, or (2) offering a time for inspection within the subsequent 10 school days; (3) seeking clarification as to specific materials which the parent/guardian seeks to inspect; or (4) indicating the materials do not currently exist. The teacher shall copy the principal on their response, and the principal shall assist to ensure the parent/guardian is able to inspect existing materials, that are not otherwise available, within a reasonable time.

Any complaints regarding compliance with this process should be made in writing to the Assistant Superintendent, Educational Services. The Assistant Superintendent, Educational Services shall respond to any such complaint within 10 school days and coordinate with the teacher and parent/guardian to ensure the parent/guardian is able to inspect materials within a reasonable time.

Inspection shall be done in the classroom or another location at the school, at the teacher's discretion, and may be limited to a reasonable amount of time per session. Multiple inspection sessions may be arranged if necessary.

Failure to comply with this process may be grounds for discipline.

[End of Exhibit D]

**<u>Exhibit E – District-wide Statement</u>**

Dear Sequoia Union High School District Families, Students, and Staff:

The Sequoia Union High School District is committed to providing all students with a safe, supportive, and inclusive learning environment free from discrimination, harassment, and bullying. We write today to address antisemitism and other forms of discrimination in our schools.

The District takes all reports of discrimination seriously and recognizes the pain and distress they can reflect. It acknowledges that Jewish and Israeli-American students, families, and staff members have reported experiencing harm caused by discrimination, including antisemitism, within our school community. These concerns have been heard by the District and it understands the importance of addressing these concerns thoughtfully and promptly. No student should feel unsafe, unwelcome, or targeted because of their faith, heritage, or identity.

**Commitment to Zero Tolerance.** The District affirms its unwavering commitment to zero tolerance for antisemitism, as well as any form of discrimination, harassment, intimidation, or bullying. We are dedicated to creating a safe and welcoming learning environment where every student can thrive academically and socially, regardless of their background, religion, or identity.

**Encouraging Reporting.** We strongly encourage all students, families, and staff to report any incidents of discrimination, harassment, or bullying. Your reports are essential to maintaining a safe school environment. Reports can be made to any teacher, counselor, school administrator, or directly to the District office. All reports will be taken seriously and addressed promptly.

**Updated Policies and Complaint Options.** The District [has revised] [will soon be revising] its Board Policies and Administrative Regulations to explicitly identify antisemitism as a prohibited form of discrimination, along with racism, sexism, heterosexism, classism, ableism, ageism, Islamophobia, transphobia, homophobia, biphobia, and xenophobia. These revisions will strengthen protections for all students and staff. These updated policies [are available] [will be available] by clicking Board Policies at the top of the District's website: www.seq.org. Complaints may be submitted through the District's Uniform Complaint Procedure (UCP) process, and information regarding the complaint process, including forms and contact information, is available on our website and at each school site. For questions or assistance, please contact Bonnie Hansen, Associate Superintendent, Human Resources & Student Services, at 650-369-1411 x22222, or bhansen@seq.org.

**Enhanced Investigation Procedures.** The District [has implemented] [within the next ## days, will be implementing] enhanced procedures for investigating complaints. These procedures include the engagement of independent outside attorney-investigators to ensure thorough, impartial, and prompt investigations. We are committed to resolving all complaints, including those of antisemitism, fairly and expeditiously.

The District remains steadfast in its commitment to the safety, dignity, and well-being of every member of our school community. Together, we can build an inclusive and respectful environment for all.

Sincerely,

Crystal Leach
Superintendent
Sequoia Union High School District


[End of Exhibit E]

**FIRST AMENDMENT TO**
**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This First Amendment to the Settlement Agreement and Mutual Release (this "First Amendment") is entered into as of June 24, 2026, by and between the Plaintiffs and Defendants identified below, who are parties to that certain Settlement Agreement and Mutual Release (the "Agreement"), dated as of May 23, 2026 (the "Effective Date"). Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Agreement. The Plaintiffs and Defendants are collectively referred to herein as the "Parties" and each individually as a "Party."

**RECITALS**

WHEREAS, the Parties entered into the Agreement as of the Effective Date to resolve the action captioned *Concerned Jewish Parents of Sequoia Union High School District v. Sequoia Union High School District*, Case No. 3:24-cv-08015-MMC (N.D. Cal.) (the "Action");

WHEREAS, Section 6.1 of the Agreement provides that within 30 days of the Effective Date, the Parties shall jointly select a Neutral;

WHEREAS, Section 5.1.2 of the Agreement provides that within 30 days of the Effective Date, the Parties shall agree on a Training Provider or Training Providers, and that if the Parties are unable to agree, one may be appointed by the Neutral;

WHEREAS, Section 5.2.1 of the Agreement provides that within 30 days of the Effective Date, the Parties shall agree on a source or sources of lesson materials, and that if the Parties are unable to agree, one may be approved by the Neutral;

WHEREAS, the 30-day deadline established by Sections 5.1.2, 5.2.1, and 6.1 of the Agreement falls on June 22, 2026;

WHEREAS, the Parties desire to extend that deadline by thirty (30) days, to July 22, 2026, to allow additional time to complete the selection of a Neutral, a Training Provider or Training Providers, and a source or sources of lesson materials;

WHEREAS, Section 12.2 of the Agreement provides that no amendment of any provision of the Agreement shall be effective unless in writing and signed by authorized representatives of each Party;

WHEREAS, Section 12.9 of the Agreement provides that the written assent of certain designated individuals shall be sufficient to satisfy any requirement in the Agreement for the agreement of Plaintiffs or Defendants, as applicable, or their authorized representatives;

NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES, COVENANTS, AND UNDERTAKINGS SET FORTH HEREIN AND IN THE AGREEMENT, AND FOR OTHER GOOD AND VALUABLE CONSIDERATION,

172807961_2

THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, AND WITH THE INTENT TO BE LEGALLY BOUND, THE PARTIES AGREE AS FOLLOWS:

## 1.   AMENDMENTS

1.1   **Amendment to Section 6.1 (Selection of Neutral).** The sentence in Section 6.1 of the Agreement reading "Within 30 days of the Effective Date, the Parties shall jointly select a Neutral" is hereby amended and restated in its entirety to read as follows: *"On or before July 22, 2026, the Parties shall jointly select a Neutral."* All other terms of Section 6.1 remain unchanged.

1.2   **Amendment to Section 5.1.2 (Selection of Training Provider).** The sentence in Section 5.1.2 of the Agreement reading "Within 30 days of the Effective Date, the Parties shall agree on a Training Provider or Training Providers" is hereby amended and restated in its entirety to read as follows: *"On or before July 22, 2026, the Parties shall agree on a Training Provider or Training Providers."* All other terms of Section 5.1.2, including the provision that the Neutral may appoint a Training Provider if the Parties are unable to agree, remain unchanged.

1.3   **Amendment to Section 5.2.1 (Source of Lesson Materials).** The sentence in Section 5.2.1 of the Agreement reading "Within 30 days of the Effective Date, the Parties shall agree on a source or sources of lesson materials" is hereby amended and restated in its entirety to read as follows: *"On or before July 22, 2026, the Parties shall agree on a source or sources of lesson materials."* All other terms of Section 5.2.1, including the provision that the Neutral may approve a source if the Parties are unable to agree, remain unchanged.

## 2.   MISCELLANEOUS

2.1   **No Other Modifications.** Except as expressly amended by this First Amendment, all terms and conditions of the Agreement remain in full force and effect and are hereby ratified and confirmed. In the event of any conflict between this First Amendment and the Agreement, this First Amendment shall control solely as to the matters expressly addressed herein.

2.2   **Defined Terms.** Capitalized terms used but not defined in this First Amendment shall have the meanings ascribed to them in the Agreement.

2.3   **Counterparts; Electronic Signatures.** This First Amendment may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. Signatures delivered by electronic means shall have the same effect as originals.

172807961_2

2.4     **Governing Law.** This First Amendment shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict-of-laws rules.

2.5     **Integration with Agreement.** This First Amendment, together with the Agreement, constitutes the entire agreement of the Parties with respect to the subject matter hereof.

IN WITNESS WHEREOF, the Parties, intending to be legally bound, have executed this First Amendment as of the dates set forth below.


**[Remainder of page intentionally left blank – Signatures on the following page.]**

172807961_2

## PLAINTIFFS

Signed by:

*Sam Kasle*

5181F540953E45B...

By: Sam Kasle
Title: Authorized Representative of Plaintiffs

Date: 7/4/2026 | 4:06 AM EDT

## DEFENDANTS


Crystal Leach (Jul 6, 2026 15:39:41 PDT)

By: Crystal Leach
Title: Superintendent, Sequoia Union High School District

Date: Jul 6, 2026

## APPROVED AS TO FORM

**ROPES & GRAY LLP**

Signed by:

*Ryan Weinstein*

69DBC3C7E4F24FB...

By: Ryan H. Weinstein
*Attorneys for Plaintiffs*

**DANNIS WOLIVER KELLEY**

William Tunick (Jul 6, 2026 15:44:47 PDT)

By: William B. Tunick
*Attorneys for Defendants*

172807961_2